DAVIS v. INDUSTRIAL COMMISSION OF UTAH et al.

No. 3787.   Decided April 6, 1922.   (206 Pac. 267.)

MASTER AND SERVANT—SHEEP HERDER HELD AN "AGRICULTURAL
LABORER" NOT ENTITLED TO COMPENSATION FOR INJURIES.   A
sheep herder is an "agricultural laborer" not entitled to com-
pensation for injuries under the Industrial Act (Comp. Laws
1917, § 3110, as amended by Laws 1919, c. 63), making the act
inapplicable to employers of "agricultural laborers," the term
"agriculture" including the rearing and care of live stock.

GIDEON, J., dissenting.

Proceedings under the Industrial Act by Evan L. Davis
for compensation for injuries, opposed by George W. Tripp,
employer.   Compensation denied by the Industrial Commis-
sion, and claimant brings proceedings to review the Commis-
sion's decision.

AFFIRMED.

*Willard Hanson* and *A. H. Hougaard,* both of Salt Lake
City, for plaintiff.

*H. H. Cluff,* Atty. Gen., *J. Robt. Robinson,* Asst. Atty.
Gen., and *C. W. Morse,* all of Salt Lake City, for defendants.

WEBER, J.

The Industrial Commission having denied plaintiff compen-
sation for alleged injuries, he brings this proceeding to review
the Commission's decision.

At the time of the alleged injuries, plaintiff and others were
in the employ of the defendant George W. Tripp.   Plaintiff
worked some 15 miles from the farm or ranch of his employer,
and devoted his time exclusively to the work of herding sheep
on the public domain.   The Commission found:

"That on the 24th day of May, 1921, and for some time prior
thereto, Mr. George W. Tripp, the defendant, had in his employ

three or more workmen; that Mr. Evan L. Davis, the applicant, on said date was engaged by Mr. Tripp to herd sheep on the public domain. That two other employees of Mr. Tripp were also employed by Mr. Tripp to herd sheep on the public domain."

From these facts the Commission concluded:

"In view of the foregoing findings, the Commission concludes that on the 24th day of May, 1921, and for some time prior thereto, the defendant was an employer of agricultural laborers, and that the applicant on said date was employed by the defendant as an agricultural laborer. That the defendant is therefore not subject to the state industrial act, and the applicant's claim for compensation should be dismissed."

In accordance with the above conclusions compensation was denied.

The question is whether a sheep herder is included within the term "agricultural laborers" as used in section 3110 of the Utah Industrial Act, which is as follows:

"The following shall constitute employers subject to the provisions of this title:

"(1) The state, and each county, city, town and school district therein.

"(2) Every person, firm and private corporation, including every public utility, that has in service three or more workmen or operatives regularly employed in the same business, or in or about the same establishment, under any contract of hire, express or implied, oral or written, except agricultural laborers and domestic servants, provided that employers who have in service less than three employés and employers of agricultural laborers and domestic servants shall have the right to come under the terms of this title by complying with the provisions thereof, and all rules and regulations of the commission." Laws 1919, c. 63.

"Agriculture" has been defined as the art of raising plants and animals for food for man. In The Americana it is said that in its accepted meaning agriculture—

" * * * not only includes the tillage of the soil and the cultivation of crops, but also the rearing and feeding of all kinds of farm live stock, and in some instances the manufacture of the products of the farm into such forms as may be more convenient or more valuable for use or for sale. The manufacture of butter and that of cheese constitute recognized branches of the art of agriculture. The distinction between arable agriculture, which includes the cultivation of the ground and the growth of crops, and pastoral agriculture, which comprises merely the feeding and management of

the flocks and herds of the farm, has been observed since the earliest times: 'Abel was a keeper of sheep, but Cain was a tiller of the ground.' In modern times, and probably in some degree at all times within the historical period, the practice of arable agriculture has been commonly associated in greater or less degree with the keeping and tending of live stock; but over immense tracts of the world's surface that are unfitted for arable cultivation the practice of pastoral agriculture still prevails, as in ancient days, wholly unmixed with the plodding labors of the husbandman."

Webster defines "agriculture" as:

"The art or science of cultivating the ground, including the harvesting of crops and rearing and management of livestock * * * tillage * * * husbandry * * * farming."

In 2 C. J. § 1, p. 988, it is said:

"The term 'agriculture' has been defined to be the 'art or science of cultivating the ground, especially in fields or large quantities, including the preparation of the soil, the planting of seeds, the raising and harvesting of crops, and the rearing, feeding, and management of live stock; tillage, husbandry, and farming.' In its general sense the word also includes gardening or horticulture."

Every standard authority that defines the word "agriculture" includes in the definition the rearing and care of live stock.

Doubtless the Legislature used the words "agricultural laborers" in their plain, usual, and commonly accepted sense and as defined by lexicographers. There is no reason for believing that it was intended that the words should be given the most narrow definition of which they are susceptible. We can see no good reason for saying that the Legislature intended that those who do strictly farm work should be classed as agricultural laborers, while those who work with and care for live stock should be excluded, where the work, is not actually done upon the employer's farm. Practically all of the sheep and cattle men of this state are also engaged in farming or ranching. As stated in the brief of counsel for defendants, it is a matter of common knowledge that in this state it is practically impossible for a stock raiser successfully to run his stock, whether it be sheep or cattle, without a farm or ranch in connection therewith. Farming, in the technical sense of the word, is so intimately associated with the stock

industry in Utah that it is practically impossible to separate the two. There are very few men who are engaged exclusively in stock raising as apart from farming, and very few farmers who are engaged exclusively in farming, as apart from stock raising.

"The two are intermingled and associated in such a way that in our opinion they could not be separated in any definite or satisfactory manner."

We must presume that the Legislature knew of this condition, and for this reason the Legislature must have contemplated that sheep herders and cattle herders would be excluded from the State Industrial Act.

Counsel for plaintiff has cited *Slaughter Cattle Co.* v. *Pastrana* (Tex. Civ. App.) 217 S. W. 749, in which it is held that one employed to poison ground squirrels on a ranch is not a farm laborer. The Texas workmen's compensation law uses the words "farm laborers," where that of Utah, on the same subject and in the same connection, provides that the act shall not apply to "agricultural laborers," a term broader and more comprehensive than "farm laborers." Webster's definition of a farmer is "one who is devoted to the tillage of the soil." "Ranchman" is defined as "the owner or occupant of, or laborer on, a ranch; a herdsman." A ranch is a tract of land used for grazing, and the rearing of horses, cattle, and sheep. Ranch and farm are both devoted to "agriculture—one to what has been called arable and the other to pastoral agriculture.

The applicant for compensation herded sheep for his employer on the public domain. If he was an agricultural laborer when herding on the owner's ranch, the fact that the sheep were herded elsewhere would not remove him from this class of labor. If raising stock on a small farm is agriculture, raising stock on a large ranch is the same; and if raising and caring for sheep on the owner's premises is agriculture, the laborer's avocation is not changed by the sheep being pastured and herded elsewhere, whether on the public domain or not.

We think that the intention of the Legislature in using the

Certiorari.  Decision affirmed

words "agricultural laborers" in the Industrial Act was to include those who work upon all kinds of farms and ranches, the wool grower as well as the wheat grower, in fact all those engaged in the various branches of agriculture.

The decision of the Commission is affirmed.

CORFMAN, THURMAN, and FRICK, JJ., concur.

GIDEON, J. (dissenting).  The Commission and the court have given too broad an interpretation to the term "agricultural laborers" as used in the Industrial Act.  The term "agricultural laborers" is found in an exception or proviso to the general words of the act.  If the definition of "agriculture" quoted in the opinion is to be adopted as controlling, the employés of creameries in this state are excluded from the benefits of the Industrial Act.  No one will contend that such was the intent of the Legislature.

I cannot agree to the statement that practically all the sheepmen and cattlemen of this state are engaged in farming. It may be true that most stockmen have farms, but the stock raisers generally are in no way dependent upon farming as a means of livelihood.  I venture the assertion that not one farmer in ten, who depends upon farming as a means of livelihood in the farming counties of Cache, Weber, Salt Lake and Utah, owns any sheep.  In the present case whatever farming the defendant did was merely incidental, or in aid of his business as an owner of and dealer in sheep.  If the facts were that owning sheep was merely incidental to farming, then a different rule might be applicable.  But in this case the herder of the sheep in question had nothing to do whatever with the ordinary work of the farm.  Such farm laborers only were, in my judgment, intended by the Legislature to be exempt from the benefits of the act.

I therefore dissent.