GEORGIA CASUALTY CO. v. HILL et al.*

No. 698.

Court of Civil Appeals of Texas. ,Eastland.

June 20, 1930.

Rehearing Denied Sept. 12, 1930.

Touchstone, Wight, Gormley & Price, of Dallas, for appellant.

Oxford & McMillan, of Stephenville, for appellees.

LESLIE, J.

On February 26, 1929, James Madison Hill was employed as a helper or nurseryman by Ross R. Wolfe, who, as owner of a nursery, was a subscriber under the Workmen's Compensation Act (Rev. St. 1925, arts. 8306–8309), by virtue of the terms of a policy insuring "nurserymen,—including drivers, chauffeurs and their helpers." On that date, acting under the directions of Wolfe and in his immediate presence, Hill, while engaged in taking a heifer for breeding purposes to a male about one and one-half miles from the nursery or place of injury, and just as he passed with the animal from the nursery grounds into the public highway, was run over by an automobile on the highway, and the injuries sustained in the collision resulted in his death in about an hour thereafter.

Compensation was awarded the appellee, the wife of the deceased Hill, by the Industrial Accident Board, and the Georgia Casualty Company, the insurer, appealed to the district court of Erath county. At a trial before the court and jury a verdict and judgment

*Writ of error granted.

was rendered to the effect that Hill received the injuries resulting in his death, and that they were received by him in the course of his employment as a nurseryman or helper in that business. Compensation was allowed, and from that judgment this appeal is prosecuted.

■ At the conclusion of the trial the casualty company asked for an instructed verdict, which was refused, and the several assignments and propositions challenge this ruling of the court, presenting in effect but a single contention; that is, that James Madison Hill, at the time he received the injuries resulting in his death, was not in the "usual" course of his employment in the furtherance of a nursery business as such. The specific contentions are urged that, at the time of the injury, he was engaged in the performance of (1) farm labor; (2) ranch labor; or that of (3) a domestic servant—all of which labors are expressly excluded from coverage by the Workmen's Compensation Law of this state. R. S. art. 8306, § 2. Under the facts of this case, the greatest emphasis is placed on the first contention, although the statutory exclusion of farm labor has no greater emphasis than that of ranch labor under the law as it now appears. The facts are undisputed, and the appellee's right of recovery therefore becomes a question of law.

■ The appellee's theory of liability is built upon the following facts, reflected in the main by the testimony of Mr. Ross R. Wolfe, employer, who, during a period of about ten years, has built up a large and flourishing nursery (chiefly pecan) business, now doing an annual business amounting to approximately $30,000, and involving the employment of numerous laborers, especially during the marketing season. He claims to be engaged exclusively in the nursery business, and as to the same, the land upon which the stock is produced, and with reference to the circumstances surrounding the death of Hill, he testified in part as follows:

"I owned 227 acres, more or less. * * * The amount of land I had and was using of my own for nursery business was approximately 40 acres. * * * The reason I had no more land than that amount for pecan nursery was because that was approximately all the land that I had suitable for growing pecan nursery stock at that time. * * * For the first year on this land we raised something; * * * we raised peas and vegetables on it; they will help care for the expense of cultivating that land. * * * As to what I was doing with the balance of the land, probably I could give you a pretty fair attitude of the situation there; of this 227 acres has been approximately 125 of it in cultivation, but the land was very poor, and so we had abandoned about 65 acres of the farm that is neither producing grass nor green crops,—it isn't set to grass; we are setting it now to grass; the remainder of that is 'shin-

nery' land. * * * At the time of this accident I had probably 65 acres I called the nursery farm in cultivation, 40 of my own to the nursery business, and part of the other 25 we have set to pecans which are coming on, four or five years old. * * *

"I kept cattle out there on that place, and on or about the 26th day of February, 1929, I was keeping out there on the place three cows and calves. * * * I had directed him to take this cow from the nursery * * * to be bred. That is one of the cows I kept on the nursery farm; that is, she was not a cow, but one of the calves, * * * a heifer. I was keeping her with the others in the barnyard there, and I was breeding her. * * *

"I live out from town about two and a half miles, as I have testified once. There is no boarding house or hotel out there. I have to work a number of employees out there on certain seasons in my nursery business. It becomes necessary at times for me to provide for feeding them, at least at the noon hour. I could not get men and hold them if I did not do that; and occasionally we do fail to keep a man if we are not prepared to feed him. * * *

"Now, in using these cows and getting their milk and butter, we eat it and drink it, and use it on the table for the use of the men we feed there at the noon hour for their lunches, which they eat at the table with members of my family. It is necessary for these men to take their lunch out there in order to make a success of that. I think I get a little more efficient service, and we eat that ourselves, and get more efficient service out of the men, makes it more convenient for them and convenient for me. * * * We milk the cows and we used the droppings from all of them to put on the soil. I have some way of preserving and taking care of all the barnyard manure; have stalls for the cows, and pick up their manure and spread it on the land with a manure spreader. We are prepared for that purpose. And that is necessary to help fertilize the land and put it in condition for the production of pecans profitably. * * * I used a great deal more fertilizer than I got from these milch cows,—quite a little more. As a matter of fact it would take quite a few head of cows to fertilize all the land. I did not undertake to keep enough cows there to furnish enough fertilizer for this land. * * * It is a fact that I did purchase other manure,—more than 200 tons, and which I had and used from outside sources. * * *

"You understood me correctly to say that, at the time of this accident I had about 40 acres of my own land which I was using in the nursery business. * * * The cows were kept there near my house in a barn, all of them. It was from this barn that Mr. Hill started on the day of the accident. * * *

"The character of work he, (Hill) was doing

there: he did almost every character of work in connection with the nursery, excepting budding,—he never did any propagating; did work such as hoeing and odd jobs, whatever we needed him at. I paid him a salary of $10.50 per week. That was cash. I furnished him his house also, and his wood and his water, which were reasonably worth $2.50 per week. * * * He was in my employ more than two years."

Upon these facts the appellee bases the contentions that the deceased Hill, in thus leading the heifer at the time of his injury, was engaged in an act in the furtherance of the nursery business in at least two different respects: (1) that, under the circumstances, it was convenient and necessary for him to feed the employees engaged by him to labor in the nursery, and to do so it was desirable that his table be furnished with milk and butter, which could only be produced from cows under proper care and breeding; and (2) that the successful production of pecan trees called for a fertilization of the land, which could be affected best by the use of fertilizers, particularly the droppings from the cows, which were by him appropriated for that purpose.

With due regard to these contentions of the appellee it becomes necessary to determine whether or not the deceased Hill, in the services in which he was engaged at the time of his death, was in the course of his employment with the nursery. Were his labors at that time incident to his employment with the nursery, under the facts detailed?

In an application of the law to the undisputed facts, it is well to have reference to certain controlling provisions of the Workmen's Compensation Law. Article 8306, R. S. (Workmen's Compensation Law) § 2 thereof, reads as follows: "The provisions of this law shall not apply to actions to recover damages for personal injuries nor for death resulting from personal injuries sustained by domestic servants, farm, laborers, ranch laborers, nor to employees of any firm, person or corporation having in his or their employ less than three employees."

Article 8309, § 1, provides: " 'Employee' shall mean every person in the service of another under any contract of hire, expressed or implied, oral or written, except masters of or seamen on vessels engaged in interstate or foreign commerce, and except one whose employment is not in the usual course of trade, business, profession or occupation of his employer."

Article 8309, § 1, second subsec. 4, of said Compensation Law, provides further: "The term 'injury sustained in the course of employment,' as used in this law, shall not include: * * * 4. An injury caused by the employee's willful intention and attempt to injure himself, or to unlawfully injure some other person, but shall include all other injuries of every kind and character

having to do with and originating in the work, business, trade or profession of the employer received by an employee while engaged in or about the furtherance of the affairs or business of his employer whether upon the employer's premises or elsewhere." · ·

From these provisions of the law it will be seen that in Texas, as appears to be the rule generally in the United States, Canada, and England, agricultural employment, in the sense of farm labor especially, has been excepted from the operation of the Workmen's Compensation Law. Farm labor is not regarded in any jurisdiction as an extrahazardous employment, and apparently it has at all times been the legislative purpose and intent, especially in Texas, to refrain from placing ·upon the employer of "farm labor" the burden of carrying compensation insurance.

The right of a nurseryman to subscribe to this character of insurance is not challenged. It is, therefore, material and controlling to ascertain whether the deceased sustained his injuries in the course of his employer's business—the nursery business—and in the furtherance thereof.

As noted, the law defines an employee in plain terms, giving to it a meaning inclusive of every person in the service of another under certain conditions, excepting a few designated persons, and specifically excepting "one whose employment is not in the usual course of trade, business, profession or occupation of his employer." In an effort to further identify those entitled to compensation under the act, the law defines "injury sustained in the course of employment," and, after excluding certain specific injuries, provides that those sustained in the course of employment "shall include all other injuries of every kind and character having to do with and originating in the work, business, trade or profession of the employer received by an employee while engaged in or about the furtherance of the affairs or businss of his employer whether upon the employer's premises or elsewhere."

With the aid of these statutes and the adjudicated cases of our own and other jurisdictions, we have reached the conclusion that the deceased Hill, at the time of his injuries, was engaged in farm labor, and was therefore not covered by the terms and character of the policy of insurance which extended solely to those engaged in Wolfe's nursery business proper. The services he was rendering might well be classified as ranch work, but under the peculiar facts of this case the breeding of the animal as an ultimate source of milk and butter was peculiarly the services of the farm laborer. That is one of the usual and ordinary tasks of a farmer, and, the employee being so engaged at the time of his injury, that fact becomes a determinative feature of this case, as we construe the authorities. It has to do with whether or not the employee was, when injured, in the course of business

of the employer. As said in Lumberman's Reciprocal Ass'n v. Behnken, 112 Tex. 103, 246 S. W. 72, 73, 28 A. L. R. 1402: "An injury has to do with, and arises out of, the work or business of the employer, when it results from a risk or hazard which is necessarily or ordinarily or reasonably inherent in or incident to the conduct of such work or business."

In this connection we are also aided in the solution of the problem before us by what is said in Wells v. Lumbermen's Reciprocal Ass'n (Tex. Com. App.) 6 S.W.(2d) 346, 348, wherein it is stated: "We think, under the definition of employee as given in the Workmen's Compensation Act, it is the character of the work being done, and not the contract of employment, that determines whether the employee is engaged in the usual course of the business." This principle is approved and emphasized in the cases cited, and discussed in the last part of this opinion.

In the case of Gordon v. Buster, 113 Tex. 382, 257 S. W. 220, 221, our Supreme Court held that, although ranch laborers were not excluded in the statute excepting farm laborers from the operation of the Workmen's Compensation Act, at the time that case arose, nevertheless, such laborers come within the meaning of farm laborers, and in the opinion the court used this language: "The Legislature of Texas, by excepting 'domestic servants' and 'farm laborers' from the operation of the Workmen's Compensation Act, has exempted the farming and agricultural industry from the operation of the law. Since we find that the general meaning of the word 'farm' includes the ranch, and 'farming' includes ranching and rearing of domestic animals, and it being the purpose to except such industry, it seems reasonable to conclude that ranch laborers were included in the exception exempting domestic servants and farm laborers."

This opinion discloses the similarity, if not the identity, of farming and ranching in the purview of the Compensation Law, and it is also authority for the conclusion that the character of the work performed by Hill at the time of the injury was farm labor, and that, to be such laborer it was not necessary to be engaged in plowing, planting, and harvesting. Further, it may be here remarked that, in 28 R. C. L. p. 718, the keeping and breeding of live stock, poultry, or bees, and the growth of fruit and vegetables are referred to as "activities all within the scope of the employment of a farm laborer."

To reach the right conclusion on the facts of this case there must be borne in mind the provisions of the law which limit the right to recovery to those injuries "having to do with and originating in the work, business, trade or profession of the employer received by the employee while engaged in or about the furtherance of the affairs or business of his employer." To show a right of recovery the burden is on the claimant to bring his state of facts within these statutory limitations. Ætna Life Ins. Co. v. Burnett (Com. App.) 283 S. W. 783; U. S. Casualty Co. v. Hardie (Com. App.) 299 S. W. 871; McDowell et al. v. Security Union Ins. Co. (Tex. Civ. App.) 10 S.W.(2d) 782.

Applying the foregoing principles and limitations to the facts of this case, we do not believe that the appellee establishes a right of recovery. The injuries sustained by the employee Hill while rendering the services in question did not have to do with or originate in the nursery business as such, and, as before stated, we do not believe he was in the course of his employment in the furtherance of the nursery business at the time he received his fatal injury. The law, as we view it, compels this holding, although it be conceded, and this court so finds as a matter of fact, that the nurserymen's maintenance and breeding of the cows as detailed by him, with the incidental production therefrom of milk and butter—essential to the proper boarding of nursery labor—amounted to and constituted a valuable auxiliary in the promotion and development of the nursery enterprise. It was farm labor just the same, and it aided the nursery business merely in the sense that farming—conducted on a large scale at times and more frequently on a small scale—is indulged in by one as a valuable sideline or aid to some other calling or pursuit that may be classified as hazardous and therefore enjoy the benefits of the workmen's compensation insurance.

Further, the purposes of Wolfe in keeping the stock would be immaterial, as would also the uses to which he devoted the products derived therefrom. These conclusions are supported by the following authorities: Shafer v. Parke, Davis & Co., 192 Mich. 577, 159 N. W. 304, 305; Greischar v. St. Mary's College, 176 Minn. 100, 222 N. W. 525, 526; Ocean Accident & Guarantee Co. v. Industrial Commission of Utah, 69 Utah, 473, 256 P. 405, 408; Austin v. Leonard et al., 177 Minn. 503, 225 N. W. 428, 429; Bates v. Schaffer, 216 Mich. 689, 185 N. W. 779.

The opinion first cited deals with a case wherein the employee was injured by being kicked by a horse on a farm maintained by the employer, Parke, Davis & Co., who were engaged in manufacturing drugs, serums, and other pharmaceutical preparations. The farm and stock thereon were used in the preparation of serums, etc., and the surplus grains from the farm were sold. The farm was maintained chiefly for the preparation of the serums. A detailed statement of the case will not be made, but it is one in point showing that a concern, which for convenience, or we might almost say, of necessity, carried on a farm in the furtherance of its main business, is not subject to the Compensation Act for an accidental injury to a servant engaged

to care for the horses on its farm. In the course of that opinion it is said that: "Any attempt to classify the employee through a consideration of the uses for which the produce of the farm is designed would lead to endless confusion. Horses are raised and kept upon a farm for many purposes other than that of tilling the soil. If any farmer in the vicinity had seen fit to raise and keep horses for the purpose of supplying serum to the respondent, he would still be a farmer; and anyone employed to do such work with and around the horses, as is usually done on a farm, would be a farm laborer." Compensation was denied.

The Greischar Case above is a very interesting one. The bishop pf the diocese owned and conducted St. Mary's College, a boarding school for boys and young men. The citizens donated a farm of 100 acres as a site for the college. 10 acres thereof were set off for a campus and college buildings. The 90-acre tract remaining was used as a dairy farm, on which were kept 25 high-bred milch cows, 4 work horses, and other stock. The milk and cream not consumed at the table by the students, or needed at a nearby school maintained for girls, was sold in the market, and the sales amounted to about $1,000 a year. Greischar was employed to milk the cows and was assigned sleeping quarters in the upper story of the power house on the campus. One morning he slipped on the stairway leading to his room and sustained fatal injuries. It was found that his death resulted from an accidental injury arising out of and in the course of his employment, but his employment was held to be that of a farm laborer and therefore not entitled to compensation under the policy of insurance protecting the employees about college buildings. In that opinion it is said: "Nor can the purpose to which the owner of the farm, upon which he was to labor, devotes the proceeds thereof, have any determinative bearing on the question whether he was a farm laborer within the meaning of the compensation law." In another part of the opinion it is said: "But relator vigorously contends that the employer was not engaged in farming; that maintaining this dairy herd was a necessary incident to carrying on the college according to the plan adopted of giving all students 'proper living accommodations under proper supervision,' and that this includes furnishing good food, such as milk, cream, and vegetables of one's own production. While the latter may be desirable for an institution having the plans and purposes of St. Mary's College, it cannot be said that the triers of fact must find that it was necessary to conduct a dairy farm to attain that object."

The third case cited, in which the opinion was rendered by the Supreme Court of Utah, dealt with a case in which the facts and principles involved are very similar to those in the preceding case. A tract of land was there purchased by an employer whose general business was that of marketing sand and gravel, which was covered by the Workmen's Compensation Act. On a portion of the land alfalfa hay was produced and fed to the horses used in operating sand and gravel beds. The employee was injured while raking hay. He died from the injury, but his dependents were held not entitled to compensation, since he was engaged in farm labor at the time of sustaining his injuries. In one paragraph of the opinion it is said: "The mere fact that the hay raised upon the alfalfa land was fed to the horses' used in operating the sand and gravel beds cannot be said to change or affect the rights of the parties herein."

The Austin Case above is one in which the employer, a corporation, was engaged in buying, selling, storing, and shipping potatoes, operating in connection therewith some four hundred warehouses, located in many states, and as a part of the business leased tracts of land and planted and produced potatoes therefrom to be shipped and sold to customers. The company was under the Workmen's Compensation Law and carried insurance on its employees, and the decedent, Roy Austin, was regularly employed to work at the various warehouses, and especially one near the place of his injury. He had been sent to a nearby farm to prepare the soil and plant the same in potatoes. He did not spend all his time on the farm, but drove to the warehouse practically every day and worked in and about the same. While returning on one occasion he was killed at a railroad crossing, and compensation was awarded solely upon the ground, (established by inferences from the testimony) that, "if, then, he was driving to Moorehead to work in the warehouse, or if that was one of the purposes of his journey, it would not seem that he was at the time engaged exclusively in a farm activity or as a farm laborer." The reasoning in the opinion is clearly to the effect that, had he been returning to the farm with seed potatoes or had been otherwise performing strictly farm labor, no compensation would have been allowed under the statute, which in effect is the same as ours on the coverage of farm labor.

The opinion will not be further extended by a discussion of the authorities. We are of the opinion that the appellee is not entitled, under the provisions of the policy and the Workmen's Compensation Act, to a recovery under the above facts.

For the reasons assigned the judgment of the trial court is reversed, and judgment will be here rendered in favor of the appellant.