FINGER, Appellant, v. NORTHWEST PROPERTIES, INC., et al, Respondents.

(257 N. W. 121.)

(File No. 7694. Opinion filed November 8, 1934.)

*Frank E. Gladstone,* of Dupree, *Dan McCutchen,* of Belle Fourche, and *H. F. Fellows,* of Rapid City, for Appellant.

*Hepperle & Fuller,* of Aberdeen, and *Morrison & Skaug,* of Mobridge, for Respondent.

RUDOLPH, J.   The plaintiff, Oliver Finger, brought this action against the Northwest Properties, Incorporated; the Big Stone Ranch, Incorporated; Fred R. Barthold; A. H. Markert; and David Duff.   The court without any objection on the part of the plaintiff dismissed the action as to the Big Stone Ranch, Incorporated, and A. H. Markert.   The defendant David Duff was never served with process.   Only two defendants, therefore, are left in the action, being Northwest Properties, Incorporated, and Fred R. Barthold.

The action was brought to recover damages on account of injuries sustained by the plaintiff as a sheep herder.   The court directed a verdict in favor of the defendants, and the plaintiff has appealed.

The material facts are as follows: Defendant Barthold owned a large ranch and owned leases upon other property all located in Haakon and Meade counties. The Northwest Properties, Incorporated, entered into an arrangement with Barthold whereby it placed a large number of sheep upon the land owned and leased by Barthold, and Barthold was placed in charge of the sheep and the business, and operated on a percentage basis with the Northwest Properties. One Duff (the named defendant who was not served with process) was employed by Barthold and had worked for Barthold for several years. The plaintiff, Finger, was working under the direction of Duff at the time he suffered the injury involved in this action. Some time in the summer of 1931 two bands of sheep were started out and were accompanied by Duff, Finger, and a man named Edson. Duff was camp tender for both hands and was in immediate charge of the care and control of the sheep. The herders received their orders from Duff. In the fall the two bands were combined and Finger was the sole herder. There were about three thousand head of sheep in the band. Duff, a wagon tender, was in charge. Duff picked the location for the camp, attended to the purchasing of provisions for the wagon and for the sheep, and was in complete charge while out on the range. It was the duty of the wagon tender to keep the sheep wagon in close proximity to the sheep, where shelter and warmth were available to the sheep herder, and to move the wagon so that shelter was available at night. It was the further duty of the wagon tender, as testified to by the witness Tidball, in the event of a blizzard to immediately consult with the herder, and determine "that he is headed the right way, and if the wagon is not already in shelter where the sheep can get to it, to remove the wagon to shelter in such position that the sheep can get to it and get their feed, and, if he cannot do that to go to the help of the herder and see that the sheep are gotten in shelter, then guide the herder to the wagon." This duty had its inception in a custom which was generally known to sheep men throughout Western South Dakota.

On the morning of January 12, 1932, Duff and Finger had their camp and the sheep along a draw called Rattlesnake creek. The snow was quite deep and the two men were on their way south with the sheep and were making a daily progress of about a mile and one-half. On this particular morning Finger started out

with the sheep intending to follow the creek bed, as directed by Duff. He started about 9 o'clock in the morning and continued until about 2 o'clock in the afternoon when a blizzard came up. Duff had not said where they would camp that night, but he had said they would work along that creek "until we had got about as far as the sheep would go." Because of the deep snow in the creek bed, it was necessary for Finger at times to drive the sheep up on the banks of the creek, and he had the sheep in this position at about 3 o'clock in the afternoon, at which time the blizzard had started, and, as described by Finger, "was pretty bad." At this time Finger observed Duff and the sheep wagon about a quarter of a mile west, and Finger testified that the topography of the land was such that Duff could have driven the wagon over to the sheep, which Duff did not do. The blizzard developed into a severe one and Finger spent about two or three hours getting the sheep into a location in the creek bed where they would be out of the wind and storm. Duff did not appear on the scene. When the sheep were finally in location, it was dark, the temperature was below zero, and the blizzard was raging. Finger started out to look for the wagon, and was unable to find it. He made three or four trips down the creek bed and his tracks the next morning showed that he had come to a point within five or six rods from the wagon. Finger was out all night until 8 o'clock the next morning, at which time the storm had subsided and he was able to locate the wagon about a half mile down the creek from where he had left the sheep. Finger's feet were both frozen, and it was necessary to amputate the legs about seven inches below the knees. No workmen's compensation insurance was carried by either of the defendants.

Respondents concede that the negligence of Duff, if any, should be imputed to the defendant Northwest Properties, but insist that, so far as the defendant Barthold is concerned, he was nothing more than an employee of the Northwest Properties, and as such was not liable for the alleged negligence of Duff. We are of the opinion that under this record Barthold should be held liable to the same extent as the Northwest Properties. Barthold testified: "My arrangement with the Northwest Properties was in writing." However, the writing was not introduced in evidence, and, so far as this record is concerned, the relationship between

these parties must be determined from the oral testimony. We are of the opinion that this oral testimony shows Barthold to be a partner of the Northwest Properties in the business in question. Barthold testified that he operated on a percentage basis with Northwest Properties both on the wool and in the sheep. Chapter 296, Laws of 1923, known as the "Uniform Partnership Act," in section 7 thereof provides the rules for determining whether a partnership exists. Subdivision 4 of said section 7 provides: "The receipt by a person of a share of the profits of a business is prima facie evidence that he is a partner in the business. * * *" We are of the opinion that the record fairly establishes that Barthold was to share the profits of the business which, under the above-quoted subdivision 4, would be prima facie evidence that a partnership existed in fact, and we are of the further opinion that there is nothing in the record to overcome this prima facie showing. We are not now purporting to pass upon anything except the facts as they are before us, and what the final outcome on this issue will be, should the case be retried and the written contract between Barthold and the Northwest Properties or other evidence received, is, of course, for future determination.

■ Appellant contends that respondents were not exempt under the provisions of section 9443, R. C. 1919, as amended by chapter 312, Laws of 1923, from carrying workmen's compensation insurance, and that it follows that the defenses enumerated in section 9444 are not available to the respondents. This contention raised the question of whether or not Duff, whose principal, if not sole, duty consisted of herding sheep, was a "farm laborer" within the meaning of section 9443 as amended. This same contention, as here urged by appellant, has been before the courts of at least two other states. See Davis v. Industrial Commission, 59 Utah 607, 206 P. 267; Slaughter Cattle Co. v. Pastrana (Tex. Civ. App.) 217 S. W. 749; Gordon v. Buster, 113 Tex. 382, 257 S. W. 220; Georgia Casualty Co v. Hill (Tex. Civ. App.) 30 S. W. (2d) 1055. Both the Texas and the Utah courts now agree that a laborer on a ranch is an employee whose work is of such a nature as to render inapplicable the Workmen's Compensation Laws of those states. As will be noted from the case of Slaughter Cattle Co. v. Pastrana, supra, the Texas courts originally entertained a different view, which was subsequently changed by the Supreme Court of Texas

in the case of Gordon v. Buster, supra, wherein the Texas court said: "Upon a careful survey of the subject, we hold the view that ranch laborers are included in the general term 'farm laborers,' as used in the statute, and that, as such, are exempted from the operation of the Workmen's Compensation Act as it stood before its amendment by the Thirty-Seventh Legislature." The Utah statute at the time of the decision of Davis v. Industrial Commission, supra, referred to "agricultural laborer," and the Utah court held that in any event a sheep herder was within the meaning of the term "agricultural laborer." Appellant points out that our original Workmens' Compensation Law, as enacted by chapter 376 of the laws of 1917, in the section exempting certain employers referred to "farm or agricultural laborers" (section 8), and argues that, because the words "or agricultural" were subsequently omitted from the law, this shows an intent on the part of the Legislature to exclude from the provisions of the law work of the nature being done by Finger. It is true that this court, in the case of Bahlkow v. Preston, 60 S. D. 151, 244 N. W. 93, 94, said that the omission of the words "or agricultural" from this law indicated "that it was desired to limit the exemptions as to rural employers coming within the Workmen's Compensation Laws." What the court said in that case was with reference to the facts then before it, which concerned an injury suffered by claimant while operating a corn shredder. There was obviously no intent in that case to say that a sheep herder or a ranch hand was not within the meaning of the term "farm laborer" as that term is now used in our statute. We are of the opinion that any attempt to draw a distinction between a farm laborer and a ranch laborer, whether that ranch laborer be engaged in herding sheep or cattle, or in some other work within the general and accepted meaning of a ranch laborer, would be without any substantial foundation. We do not believe that it would be possible in South Dakota to draw any line of demarcation which would accurately indicate where farming left off and ranching began or vice versa. In other words, we do not believe that there is any real distinction that can be drawn between a ranch laborer and a farm laborer in this state. While herding and attending sheep is perhaps a common function on a "ranch" as we know that term in this state, it is also true that herding and attending sheep is often carried on on a "farm" as we know that term.

It might be said that growing oats or barley is properly the function of a farm, but we must recognize that which we know, which is that most so-called "ranches" also grow oats and barley, oftentimes in abundance. We are, therefore, of the opinion that the plaintiff Finger was a "farm laborer" within the meaning of section 9443, R. C. 1919, as amended, and that the provisions of the Workmen's Compensation Law (Rev. Code 1919, § 9436 et seq., as amended) are not applicable. It follows that defendants are not denied the defenses enumerated in section 9444.

We come now to the contention of the respondent that the record fails to establish any actionable negligence. It was not pleaded and there is no contention that Duff was a fellow servant of Finger within the meaning of the fellow servant rule. It was admitted on oral argument, and the record fairly establishes, that if Duff were, in fact, negligent, this negligence should be chargeable to the respondents. The admission in oral argument was, of course, subject to the contention that the relationship between Barthold and the Northwest Properties was such that the negligence of Duff in any event should not be chargeable to Barthold. Our inquiry, therefore, is: Is there sufficient in the record upon which the jury could find that Duff was negligent? Under the record as presented Duff's duty was clear. It was Duff's duty to contact the herder and determine that he was going in the direction where the wagon would eventually be placed, and, if possible, Duff should have moved the wagon to shelter in such a position that the sheep could get to it and get their feed. If it were not possible to get the wagon to the sheep, then it was his duty to go to the help of the herder and aid in getting the sheep in shelter, and guide the herder to the wagon. The record is equally clear that Duff failed in the performance of this duty. It is apparently respondents' view, however, that if the record establishes that, because of the severity of the storm, it was impossible for Finger to reach the wagon, it then follows that this same condition rendered impossible the performance of the duty resting upon Duff. However, it was not Finger's duty to contact Duff. Finger saw Duff and his wagon during the early part of the storm, and at this time Finger was in such a position with his sheep that the jury could reasonably believe that Duff had seen Finger. There is some dispute in the record regarding the topography of the land

lying between Duff and Finger, but there is evidence upon which the jury could reasonably find that Duff could have driven his wagon across to the point where Finger was at that time. However, should the jury have been of the opinion that, because of the topography of the land, it was impossible for Duff to reach Finger with the wagon, it could have reasonably found that Duff, who had with him a saddle horse, should have contacted Finger at that time in accordance with that first part of his duty which requires him to contact the herder and determine that "he is headed the right way." We believe, under the record as presented, that it would have been reasonable for the jury to find that Duff, even after he had his wagon in place, because of the fact that he had available a saddle horse and the further fact that he had as his objective a band of three thousand sheep, could have contacted Finger when it was impossible for Finger to contact Duff; Finger being without a saddle horse and having as his objective the much smaller object of the camp wagon. We are of the opinion that the negligence of Duff was a question to be presented to the jury under proper instructions. We are also of the opinion that the question of the contributory negligence of Finger should have been submitted to the jury. Finger had a right to rely upon Duff performing the duty which the custom of the western range country had placed upon him. Polluck v. Railroad Company, 44 S. D. 249, 183 N. W. 859, 863. Whether Finger acted with ordinary care for his own safety under all of the facts and circumstances here presented, including the known custom relative to the duty of Duff, must, in our opinion, be left to the jury. This court in the case of Bergeron v. M. & St. L. Ry. Co., 37 S. D. 458, 159 N. W. 51, 54, quoted with approval the language of Justice Lamar in Grand Trunk R. Co. of Canada v. Ives, 144 U. S. 408, 12 S. Ct. 679, 36 L. Ed. 485, and we believe it again pertinent here: " 'There is no fixed standard in the law by which a court is enabled to arbitrarily say in every case what conduct shall be considered reasonable and prudent, and what shall constitute ordinary care, under any and all circumstances. The terms "ordinary care," "reasonable prudence," and such like terms, as applied to the conduct and affairs of men, have a relative significance, and cannot be arbitrarily defined. What may be deemed ordinary care in one case may, under different surroundings and circumstances, be gross negligence. The policy of

the law has relegated the determination of such questions to the jury, under proper instructions from the court. It is their province to note the special circumstances and surroundings of each particular case, and then say whether the conduct of the parties in that case was such as would be expected of reasonable, prudent men, under a similar state of affairs. When a given state of facts is such that reasonable men may fairly differ upon the question as to whether there was negligence or not, the determination of the matter is for the jury. It is only where the facts are such that all reasonable men must draw the same conclusion from them, that the question of negligence is ever considered as one of law for the court.' "

Respondents further contend that Finger had assumed the risk of those conditions which brought about his injury. This court, in the case of Polluck v. Railroad Company, supra, held adversely to this contention of respondents in language so applicable to this present situation that we will simply quote from that case and comment no further regarding this contention. We quote: "Under the assignment appellant contends that plaintiff, knowing the conditions attending the work in which he was engaged, assumed the risk incident to such occupation, and is not entitled to recover. It is perfectly clear, however, that plaintiff did not assume the risk of injury by reason of defendants acts of negligence. Plaintiff knew that the custom and rule in the operation of engines at night required the ringing of the bell and the display of lights on the engine as a warning to persons working upon the premises. That such was the custom and rule is conclusively established by the testimony of defendant's own witnesses, and plaintiff did not assume any risk which might result from a violation of such rule and custom."

The judgment and order appealed from are reversed.

All the Judges concur.