Hinson v. Creech

WILBUR HINSON, WIDOWER OF NANNIE MAE HINSON, DECEASED, EM-
PLOYEE-PLAINTIFF v. MR. & MRS. JOHN W. CREECH, t/a JACKSON
EGG FARM, EMPLOYER-DEFENDANT (NON-INSURER)

No. 748IC160

(Filed 5 June 1974)

1. **Master and Servant § 49— Workmen's Compensation Act — exemption
   of employees in agriculture and domestic services**

   G.S. 97-2(1) specifically exempts employment in agriculture and
   domestic services from the definition of employment within the mean-
   ing of the N. C. Workmen's Compensation Act.

2. **Master and Servant § 85— death of employee while delivering eggs —
   jurisdiction of Industrial Commission**

   Keeping poultry and harvesting and selling the eggs produced by
   that poultry is an agricultural enterprise and those who labor therein
   are farm laborers not subject to the Workmen's Compensation Act;
   therefore, the Industrial Commission properly dismissed plaintiff's
   claim for lack of jurisdiction where the evidence tended to show that
   plaintiff's intestate worked in the egg house on defendants' farm and
   made deliveries of the eggs, and that she was killed in a motor vehicle
   accident while delivering eggs in her employer's truck.

APPEAL by plaintiff from an opinion and award of the
North Carolina Industrial Commission filed 7 August 1973.

Plaintiff is the surviving spouse of the deceased employee,
Nannie Mae Hinson, who was killed in a motor vehicle acci-
dent while delivering eggs in her employer's truck.

Defendants (Employer) are John W. Creech and wife Jean
Creech, who, under a certificate duly filed with the Register of
Deeds of Lenoir County, do business under the assumed name
of Eugene Jackson Egg Service.

Employer is engaged in the production and sale of eggs.
Employer buys chickens when they are one day old and raises
them until they begin laying eggs. When the hens complete
their twelve to fourteen month laying cycle, they are removed
from the farm. The eggs are cooled, cleaned, graded and pack-
aged on Employer's premises, which he leases. They are then
delivered to various stores, institutions, restaurants and indi-
viduals in two trucks owned by Employer. Some eggs are sold
to an egg broker who takes possession on Employer's premises.
Employer buys all of the chicken feed and stores in it in grain
bins located on the leased premises. The bins have a capacity of
26,000 bushels. There are twelve chicken houses and an egg

house. Employer also operates a hog parlor on the premises. Employer has five or more employees and does not carry Workmen's Compensation Insurance.

Employee's duties were limited to work in the egg house and delivery. She cleaned, graded and packaged eggs while working in the egg house. When she delivered eggs, she collected money from the purchasers and kept records on the sales. Her average weekly wage was $50.00 per week.

A deputy commissioner made findings of fact substantially in accord with the foregoing. He then made the following:

### "CONCLUSIONS OF LAW

1. The defendants are engaged in an agricultural pursuit, and the employees of the defendants, including the deceased employee, Nannie Mae Hinson, are farm laborers. The defendants are exempt from the North Carolina Workmen's Compensation Act. G.S. 97-2(1), G.S. 97-13, . . . "

The claim was dismissed for lack of jurisdiction. On appeal to the full Commission the opinion and award of the deputy commissioner was adopted as the opinion and award of the Industrial Commission.

*Gerrans & Spence by William D. Spence for plaintiff appellant.*

*White, Allen, Hooten & Hines, P.A. by John R. Hooten for defendant appellees.*

VAUGHN, Judge.

[1] General Statute 97-2(1) specifically exempts employment in agriculture and domestic services from the definition of employment within the meaning of the North Carolina Workmen's Compensation Act. Another exemption is found in G.S. 97-13(b) which provides that the article shall not apply to farm laborers.

The thrust of plaintiff's argument is that Employer is not really engaged in agricultural pursuits but in the large scale commercial production and marketing of chicken eggs. Plaintiff further contends that cleaning, packaging and delivering eggs is not employment in agriculture or the work of a farm laborer. He argues that the exemptions should be limited to small dirt farms and those engaged in tilling the soil or raising livestock

Hinson v. Creech

and certainly not exclude an employee who is delivering eggs in a motor vehicle over the public highways of this State.

In *Fleckles v. Hille,* 83 Ind. App. 715, 149 N.E. 915, the court noted, in evaluating the nature of an egg and poultry business, that agriculture includes "the raising, feeding and management of livestock and poultry." The court in *Davis v. Industrial Commission,* 59 Ut. 607, 206 P. 267, observed, after setting forth several examples, that "[e]very standard authority that defines the word 'agriculture' includes in the definition the rearing and care of live stock (sic)." Similarly, the court in *Shafer v. Parke, Davis & Co.,* 192 Mich. 577, 159 N.W. 304, states that "the raising and care of stock are the ordinary uses to which a farm is put. . . . " The definitions of "agriculture" and "farm" found in Webster's Third New International Dictionary are compatible with the above observations.

*Department of Labor and Industries v. McLain,* 66 Wash. 2d 54, 401 P. 2d 211, involved a fact situation very similar to the one at hand. In *McLain* the following facts were stipulated.

"Mr. Hauenstein owned 22 acres of land near Reardan. With the exception of one cow, for family use, the land was devoted exclusively to a poultry and egg-laying business. The land was not cultivated and nothing was produced therefrom. The buildings consisted of Mr. Hauenstein's home, some outbuildings appurtenant thereto, and five laying houses. One-day-old chicks were bought and thereafter raised on the premises. Normally, 10,000 to 12,000 laying hens were maintained at one time. The hens, after attaining two years of age, were butchered, usually by third parties off the premises. All of the feed was purchased elsewhere, then ground and mixed on the premises in a feed room at the end of one of the laying houses. Two auger machines powered by ¾-horsepower electric motors lifted the feed to a grinding machine which was powered by a 15-horsepower electric motor. The ground feed was put through a mixing machine, powered by a 7½-horsepower electric motor. It was then transferred to an adjacent laying house by a bucket conveyor powered by a ¾-horsepower motor. Next to the feed room was a cooler room where the eggs were stored and cleaned by the use of two egg washers, each powered by a ⅓-horsepower electric motor."

It does not appear that the employee's duties included delivery of the eggs. The court rejected the claimant's contention

that the Dottie Egg Farm was a commercial enterprise and not a farming operation with respect to the Workmen's Compensation Act.

Courts from other jurisdictions have reached different results on somewhat similar facts.

[2] We are well aware that many modern agricultural enterprises are conducted on such a scale and fashion that there is little to distinguish them from any other business with respect to size, number of employees and nature of employment. Presumably, the legislative branch is also aware of the changes that have taken place but has seen fit to continue to exempt those employed in agriculture, without regard to the number of employees or the size of the enterprise. We decline to don the legislative mantle. We believe that keeping poultry and harvesting and selling the eggs produced by that poultry is an agricultural enterprise and those who labor therein are farm laborers.

Affirmed.

Judges CAMPBELL and MORRIS concur.