## JOHN W. GORDON v. JACK V. BUSTER.

No. 3476.   Decided December 20, 1923.

(227 S. W., 220.).

**1.—Master and Servant—Workmen's Compensation Act—Farm Laborer—Stock Raiser—Ranch.**

Vernon's Civ. Stats., 1918, art. 5246, sec. 2, (Act of March 28, 1917, Laws, 35th Leg. p. 270, ch. 103, pt. 1, sec. 2) excepting farm laborers from abolition of the common law defenses of assumed risk and contributory negligence applied by that statute to other employees, included in the term farm laborers employees on ranches engaged in stock-raising; and this prior to the amendment to such section (Act of March, 1921, Laws, 37th Leg., p. 221, ch. 115) which specifically included ranch laborers in such exception.   (Pp. 383-387).

**2.—Same.**

Though sometimes locally distinguished, the term farming, in its general sense, includes stock raising as well as cultivation of the soil, and farm laborers must be held to have been used in this broader sense in the Act of March 28, 1917.   (Pp. 384-386).

**3.—Cases Overruled.**

The ruling in this case on appeal, Gordon v. Buster, 236 S. W., 803, and in C. C. Slaughter Co. v. Pastrana, 217 S. W., 749, is disapproved.   (P. 384).

**4.—Master and Servant—Assumed Risk—Contributory Negligence.**

The defenses of assumed risk and contributory negligence were not abolished by the Workman's Compensation Act as to an employee engaged in stock-raising on a ranch, and   he can not recover for personal injury received in such service where his own testimony shows that it was, under common law rules, by a risk assumed by him and through his own contributory negligence.   (Pp. 384-387).

Error to the Court of Civil Appeals for the Seventh District, in an appeal from Deaf Smith County.

Buster sued Gordon and obtained judgment which was affirmed on appeal by defendant (236 S. W., 803) who then obtained writ of error.

*Carl Gilliland,* for plaintiff in error.

Slycord v. Horn, 7th A. L. R. A., page 1285; Miller & Lux v. Industrial Accident Commission 7th A. L. R. A., p. 1291; Annotations in 7th A. L. R. A., pp. 1296-1301; District of Columbia v. Oyster, 54th Am. Rep., 275; Mayor, City of Philadelphia, v. Davis, 6th Watts & S., 269; Dallas County v. Land & Cattle Co., 95th Texas, 200 (208); Laughter v. Seela, 59th Tex., 177 (186); Breault v. Archambault, Am. St. Rep., volume 58, p. 545; George v. Industrial Accident Commission, 174th Pac., 653.

*W. H. Russell,* for defendant in error.

Appellant does not pretend that he is not liable under the Workman's Compensation Act. Slaughter Cattle Co. v. Pastrana, 217 S. W., 749; West Lumber Co. v. Keene, 221 S. W., 625; Stone & Webber v. Goodman, 167 S. W., 10.

MR. JUSTICE PIERSON delivered the opinion of the court.

Plaintiff in error owned ranches in Castro, Deaf Smith, and Terry Counties, upon which he employed more than three men. On the Castro County ranch there was a farm in connection. He had three employees there: defendant in error, who looked after the ranch work proper, and two others, who did the work primarily appertaining to the raising of and gathering the crops. For a full statement of the facts see Gordon v. Buster, 236 S.W., 803.

The single question here presented is whether or not a ranch laborer is exempted from the Workmen's Compensation Law by Art. 5246-2 (V. C. T. S.) under the general term "farm laborers."

Under Art. 5246-1 the common law defenses of contributory negligence, negligence of a fellow employee, and assumed risk are taken away and denied, and unless ranch labor is included in the exception "farm laborers," mentioned in Art. 5246-2, plaintiff in error would be denied the defenses of contributory negligence and assumed risk herein, and the judgment against him must stand as found by the District Court and affirmed on appeal.

Art. 5246-2 provides:

"The provisions of this Act shall not apply to actions to recover damages for the personal injuries nor for death resulting from personal injuries sustained by domestic servants, farm laborers," . . .

Upon a careful survey of the subject, we hold the view that ranch laborers are included in the general term "farm laborers" as used in the statute, and that, as such, they are exempted from the operation of the Workmen's Compensation Act as it stood before its amendment by the Thirty-seventh Legislature.

As noted by Mr. Justice Hall, at its next session after the rendition of the opinion by the Eighth Court of Civil Appeals in the case of C. C. Slaughter Cattle Co. v. Pastrana, 217 S. W., 749, wherein it was held that a ranch hand was not a farm laborer within the meaning of the Act, the Legislature amended the Act so as to specifically except "ranch laborers," and in the emergency clause used language that strongly indicated that that body considered that the exception "farm laborers" in the original Act did include ranch workers.    The emergency clause recites:

"The fact that this Act as now construed by the courts applies to actions to recover damages for the personal injuries of, and for death resulting from personal injuries sustained by ranch laborers, while actions by farm laborers and other domestic servants are exempted from its provisions; that labor upon ranches as they are now conducted, is no more hazardous employment than farm labor, and that the producers of live stock are being caused to incur much unnecessary expense for their protection, creates an emergency," etc.

The judgment in the Slaughter Cattle Co. Case was amply supported and ruled by other issues of law.    It was with apparent reluctance that the Honorable Court of Civil Appeals followed the holding in that case upon this issue in the instant case.

Considering the general purpose of the Act and by giving to the exception of "domestic servants" and "farm laborers" their broad and general meaning, independent of the view expressed by a succeeding Legislature, we think the words "farm laborers" legitimately include, and were intended to include, ranch laborers.

It must be conceded that the defenses of contributory negligence and assumd risk remain to plaintiff in error, unless they are taken away and denied by the statute.    The statute takes away these defenses from all employers except those enumerated in Sec. 2 (Art. 5246-2) of the Act.    Sec. 2 is a positive affirmation within the enacting clause of the Act reserving these defenses to the employers of the laborers therein mentioned, and should be construed with a view to effect its object.    As has often been stated, a statue must be given that meaning which will comport with the intention of the Legislature.

Agriculture, as defined by Webster, is the "art or science of cultivating the ground, including harvesting of crops and rearing and management of livestock, husbandry; farming; in a broad sense, the science and art of the production of plants and animals useful to man."

He defines Farm, ''Orig. a piece of land held under lease for the purpose of cultivation; hence any tract of land (whether consisting of one or more parcels) devoted to agricultural purposes, including the production of crops and generally of animals, under the management of the tenant or the owner.''

A farm, then, originally was a lease or letting or farming out of land for a specified term and a fixed amount of these purposes. Webster then further defines it, ''Hence a plot or tract of land devoted to the raising of domestic or other animals.''

He defines farm, the verb, ''to produce crops and animals on a farm.''

He defines farmer, ''one who conducts or manages a farm  .  .  . a stock farmer.''

He defines ranch,—''2. Loosely a farm, esp. of large size.'' And rancho,—''2. A large grazing farm; a ranch.''

·The Standard Dictionary defines ranch: ''1. (Western U. S.) An establishment for rearing or grazing cattle and other stock in large herds; as a sheep ranch; a cattle ranch. 2. A farm; the original meaning.

In connection with the definition of farm, Bouvier's Law Dictionary quotes the following:

''A large tract or portion of land taken by a lease under a yearly rent payable by the tenant. Tomlin, Law Dict.

''From this latter sense is derived its common modern signification of a large tract used for cultivation or other purposes, as raising stock, whether hired or owned by the occupant, including a messuage with out-buildings, gardens, orchard, yard, etc. Plowd. 195, Touchst. 93.''

From the general context of the Act we think it was the purpose and intention of the Legislature in enacting this law to make a distinction as between agricultural pursuits generally and those of a more hazardous nature.

The Legislature of Texas, by excepting ''domestic servants'' and ''farm laborers'' from the operation of the Workmen's Compensation Act, has exempted the farming and agricultural industry from the operation of the law. Since we find that the general meaning of the word ''farm'' includes the ranch, and ''farming'' includes ranching and rearing of domestic animals, and it being the purpose to except such industry, it seems reasonable to conclude that ranch laborers were included in the exception exempting domestic servants and farm laborers.

The Supreme Court of California, while commenting upon the meaning to be given to the word ''farming' used in the clause excluding that industry from the operation of the Workmen's Compensation Act, said:

''While it is true that an employer may be engaged in several sorts of industry, some of them within and some of them without the pur-
Vol. 113 Tex.—25

view of the Compensation Act, and that an employee may at different times do work of one kind or the other, it is equally a fact that where, from the great extent and complexity of farming operations on a given rancho, the work of the farmers is classified, and each is given a limited, rather than a diversified, duty, that circumstance alone will not make some of them artisans rather than agriculturists.'' Miller & Lux v. Industrial Accident Commission, 179 Calif., 764, 178 Pac., 960, 7 A. L. R. 1293.

Also, that Court, with apparent approval, in that case makes the following observation:

''Our own Industrial Accident Commission of California has decided that a cook employed on a cattle ranch to prepare meals for the workmen was engaged in farm labor and stock raising, and was excluded from the provisions of the Compensation Act. Olsen v. Rogers Development Co., 2 Calif. Industrial Acci. Com., Dec. 560.''

The Supreme Court of Illinois in the case of People ex rel. Rogers, County Clerk, v. Caldwell, 142 Ill., 434, 32 N. E. 691, in its discussion of that case, said:

''A farm is, both by the standards and in common acceptation, defined to be a body of land, usually under one ownership, devoted to agriculture, either to the raising of crops or pasturage or both.''

The noun farm in this country prominently means a tract of land chiefly under cultivation. While it is in this sense that the word is most frequently used, yet, as we have seen, in its general scope and significance it means any tract of land used for the production of crops or the rearing of animals. The expressions ''stock farmer'' and ''stock farming'' embody the idea that one is largely, if not wholly, engaged in the rearing of live stock, such as horses, cattle, sheep, hogs, etc.

Forty years ago and more in Texas there was perhaps a more distinct application of the words ''farm'' and ''ranch'' in the popular mind, though the general and broad meanings were recognized. The Workmen's Compensation Act was enacted in 1913. The ranching business had undergone great change. The broad, unlimited ranges of the West had passed. The ranches were all under fence, and the ranch-hand or laborer no longer was subjected to the hazards and exposures of the range. The work was reduced to fence riding, keeping up fences, feeding and caring for the stock, and occasionally penning and shipping them. In connection with many if not most ranches, there was active farming in the way of cultivating and raising crops, particularly feedstuffs, and the ranchman frequently referred to himself as a farmer.

In all parts of Texas and the country generally, the raising of stock, especially cattle and hogs, and the growing of crops on the farm have been inseparable, and the one usually indispensable to the other On the trial of this case defendant in error testified: ''I had

worked on ranches considerably, practically all my life. I was raised on a stock farm where we farmed and raised cattle, and fed the crops to the cattle.''

With these conditions it is reasonable to conclude that the Legislature in enacting this statute, modeled as it was from the statute of Massachusetts (a State where the words "farm" and "farming" would have been understood to include stock raising), in its use of the words "farm laborers" did not intend that they should be limited to a provincial usage, but intended them in their general and comprehensive meaning.

The testimony of defendant in error shows conclusively that he had assumed the risk that caused his injury, and also was guilty of negligence which contributed thereto.

The judgments of the Court of Civil Appeals and of the District Court are reversed, and judgment is rendered for plaintiff in error.

*Reversed and remanded.*