The plaintiff was employed by the defendant, Catherine Sugar Company, Inc., on one of its two plantations, as a cane cutter. It is shown that the defendant operated a sugar factory in connection with its plantations and that all or part of the cane produced on these plantations was transported later to the factory to be manufactured into sugar. The duties of plaintiff were strictly that of cutting cane and he had nothing to do with the transportation of the cane to the factory or with the processing of said cane into sugar. It is further shown that the plaintiff was one of many employees of the defendant company, who resided across the Mississippi River in East Baton Rouge Parish, and that it was the custom of the defendant company to pick up these employees in the morning at their respective homes, in a cane truck and trailer, and to return them in the evening, after their labors were completed, in the same manner. For that purpose, the company furnished its own driver of the truck. There was no requirement or agreement that these employees, including plaintiff, had to use this particular means of transportation. This means of transportation was furnished for their convenience and they had the option of using any other means which they chose.
It is alleged that on December 2, 1941, while being transported to his home in East Baton Rouge Parish, in a cane truck and trailer owned by defendant and operated by its employee, plaintiff was thrown out when the truck was stopped suddenly and without warning, and that the fall broke plaintiff's leg. On these facts, plaintiff sues in tort for his pain and injury, alleging that his fall and resulting injury was caused solely by the gross negligence of *Page 914 
defendant's truck driver operating in the course and scope of his duties. In the alternative, he sues under the Workmen's Compensation Act, Act No. 20 of 1914, as amended, in the event that such act should be found to apply, seeking compensation for permanent total disability.
The defendant admits the employment of plaintiff at the daily wage of $1.65, as alleged in the petition, but denies that such injury as plaintiff may have sustained was in any way caused my negligence on its part or the part of its truck driver. The answer sets forth that such injuries as plaintiff may have sustained were caused by his own acts and outside of the scope of his employment. The answer further sets forth that plaintiff's occupation was strictly that of cane cutter and that, therefore, was not in a hazardous occupation, and hence, his claim does not come within the terms and provisions of the Workmen's Compensation Act.
After hearing the case, the trial court for written reasons assigned, rendered judgment, dismissing plaintiff's suit at his cost, and from that judgment, the plaintiff has appealed.
The first question to consider in this case, is whether or not the Workmen's Compensation Act applies in the light of the admitted facts. If it does apply, it is obvious that the question of tort is not involved.
It is clearly shown by the evidence that the only required duty of plaintiff was that of cutting sugar cane and that his only contact with machinery of any kind was riding back and forth as a passenger in the company truck, and that this was not required of him, but was merely an accommodation for his convenience, which he could accept or reject. As aforesaid, the defendant company was engaged in a business consisting of two distinct departments: (1) that of growing sugar cane, and (2) that of manufacturing sugar from sugar cane, and as set forth in the case of Robichaux v. Realty Operators, 195 La. 70,196 So. 23, 26:
"The question whether the employer's business in which the plaintiff was performing services at the time of the accident was a hazardous or a non-hazardous business depends upon whether such services as the plaintiff was performing should be classed as appertaining to the manufacturing department or as appertaining to the farming department of the business."
In the Robichaux case, supra, the employee's duties consisted of gathering the sugar cane into separate piles for the loader to pick up, which the court held to be the initial step in the delivering of the cane to the factory, and quoting:
"The cane had been stripped of its leaves, and topped, and severed from the soil by the cane cutters, and was therefore a finished product, as far as the farming or agricultural process was concerned, and was completely prepared for delivery to the mill, before the plaintiff's services began. Farming is not a hazardous business or occupation, and is therefore not governed by the workmen's compensation law; but the operation of a factory or mill, including, specifically, the operation of a syrup mill, sugar house or sugar refinery, is declared to be a hazardous business or occupation, in Act No. 20 of 1914, Sec. 1, subd. 2, Dart's Stat. § 4391."
It is clear from the Robichaux case that the court considered that the operations on a sugar plantation up to the time that the cane was cut from the ground, was strictly a non-hazardous farming operation, and that the hazardous manufacturing operation did not begin until the beginning of the piling and loading of the cane. We believe that this view is correct and that in accordance therewith, the case at bar does not come within the Workmen's Compensation Act, for the reason that it is clearly shown by the facts that plaintiff's duties consisted entirely of cutting cane, an agricultural pursuit, and that his mere transportation to and from the cane fields does not alter his status as a cane cutter.
With reference to the questions as to whether the defendant company can be held liable in tort, we must consider the finding of fact made by the trial court and decide whether or not there is any manifest error in that finding. The facts as found by the trial court are briefly as follows: *Page 915 
On the return trip from the plantation, the company cane truck and trailer was being driven by Joe Dupree, and in the cab with him, were four Negro women cane cutters, two sitting on the seat and the other two sitting on them. It appears that these women started teasing one another and that one or the other became angry, and fighting ensued. The truck driver thereupon pulled the truck onto the shoulder and stopped it, and the women alighted from the truck and continued to fight. The plaintiff was at the extreme rear of the cane trailer, and upon hearing the noise and seeing the fight going on outside, climbed over the side of the truck at the rear, and jumped and fell to the ground or pavement, and injured his leg. It seems that his idea in getting off the cane truck was to go separate the women and stop the fight. Afterward, some of the other Negro cane cutters picked the plaintiff up and placed him back in the cane trailer, and later still, he was taken out of the truck about one quarter mile from his home, which could not be reached by the truck, and was taken to his home by four of his fellow employees.
The driver testified that he stopped his truck in a normal manner and without any jerk, and in that respect, he is corroborated by others. Further, it is shown that the truck trailer was not overcrowded.
If the above is a true statement of the facts, it is obvious that the driver was guilty of no negligence and that the plaintiff has only himself to blame for his injuries. Even under the provisions of the Workmen's Compensation Act, it must be said that plaintiff under these facts, was strictly on a mission of his own, and should it be found that the employee was engaged in a hazardous occupation, the accident could not be considered as coming within the scope of employment.
It is strenuously contended by plaintiff, however, that the facts are not as stated. Plaintiff contends that the driver of the truck stopped suddenly and that he thereupon started again for the shoulder, and again stopped suddenly, and that because of the severe jerk or jolt in stopping, plaintiff was thrown out of the back of the truck and was knocked unconscious and sustained the injuries complained of herein. The majority of the witnesses testified to that effect, but the trial judge apparently believed the driver and those who corroborated him. As to whether or not plaintiff was thrown out of the truck or jumped out of the truck, it must be observed that this cane trailer was cradle-shaped, with a slant in the rear, and with sides approximately four feet in height. There is testimony to the effect that plaintiff was sitting on a board at the extreme rear of the truck, which board was about one and one-half to two feet from the floor. There is other testimony to the effect that he was sitting on the floor and leaning backwards. In any event, even if the truck jerked, it is difficult to see how it was physically possible for him to have been tossed over this rear slant of the trailer, even though several of the witnesses so testified. It may be noted that it was practically dark at that time and very easy for the occupants of the truck to have gotten the impression that plaintiff was thrown from the truck, while as a matter of fact, he jumped out of the truck. We are impressed by the testimony of the Baptist Minister, Middleton, to the effect that he was sitting near the plaintiff and clearly saw him climb over the side at the rear, and also by the testimony of witness Spears to the same effect.
The testimony is to the effect that plaintiff was found in the rear of the truck and counsel for plaintiff contends that this shows definitely that he must have fallen from the truck, and had not jumped from the side of the truck, for if he had jumped, he would not have been in the rear. However, on that point, it is noted that there is no testimony to the effect that he was found in the middle rear or side rear of the truck.
There is much confusion in the testimony in this case, which was tried some five and one-half years after filing, but we agree with the trial judge that plaintiff has not sustained the burden of proving that the accident was caused by the negligence of the truck driver of defendant company. We feel that if plaintiff was in the position he says he was, it was practically physically *Page 916 
impossible for him to have been tossed out, and that the testimony of Reverend Middleton is the logical explanation of what happened.
For these reasons, the judgment appealed from is affirmed.