**MILLERS MUTUAL FIRE INSURANCE COMPANY OF TEXAS, Appellant,**

v.

**Silviry (Mitchell) RAWLS, Appellee.**

**No. 7449.**

Court of Civil Appeals of Texas, Beaumont.

Oct. 4, 1973.

Rehearing Denied Oct. 25, 1973.

Wm. Drew Perkins, Lufkin, for appellant.

Smith & Jones, Woodville, for appellee.

DIES, Chief Justice.

This is a workmen's compensation case. The employer, Angelina Poultry Company, is a processor of broiler chickens. In its operations, it delivers chicks to owners of broiler houses on a contract basis. The chicks belong to Angelina which also purchases the feed. The house owner feeds and cares for the chicks until they reach market size, some nine to eleven weeks later, when they are gathered in trucks owned by Angelina by its employees and taken to the processing plant, which was in Lufkin at the time of this accident.

To gather or pick up the chickens at the broiler houses, Angelina uses school age boys, ages eight to eighteen. They are picked up, usually at their homes, late in the evening, driven to the broiler house where they catch and load the chickens, and then returned to their homes later that night. This was done five nights a week. Once a week, Angelina's man in charge of the gathering operation—at this time, one Booker T. Mitchell—would turn in a list of the boys who worked that week to the Woodville manager, together with the number of chickens gathered, since the

boys were paid a price per chicken. The manager would then draw a draft on Angelina for the total due, give it to Booker T. Mitchell who would distribute it to the boys on Thursday night.

On May 26, 1970, Booker T. Mitchell, driving an Angelina pickup truck, picked up James Stanley Mitchell, age eight. James was in a special education first grade class because he was "slow". Mitchell loaded about eleven other boys and they headed for a broiler house in Jasper, Texas. Since it continued to rain, after two and a half hours of waiting, they headed back without catching any chickens. James rode back in another Angelina truck driven by Melvin Mitchell. This was to get out of the rain.

When they arrived at James' home, the driver stopped the truck across the highway and admonished James and another boy in the cab not to cross the road but "stand here until I tell you all to go." Without being told to do so, James started across the highway and was killed by a passing vehicle.

The mother of James Stanley Mitchell brought this suit under the Workmen's Compensation Act and after a jury verdict, recovered judgment for $4,725.73, from which the insurer perfects this appeal.

Appellant's first point of error is:

"The trial court erred in entering Judgment for Plaintiff because there is *no evidence to support the jury's answer* to Special Issue Number Three which found that James Stanley Mitchell was an employee of Angelina Poultry Company."

In oral argument, appellant's counsel explained this was limited to the reason that at the time of death, James was a farm laborer. Art. 8306, § 2, Vernon's Ann.Civ.St., exempts "farm laborers" from the Texas Act and we have been directed that this term should be given "broad and general meaning." Ellis v.

Continental Casualty Co., 115 F.2d 1006, 1007 (5th Cir. 1940). However, we have been cited no case and have been able to find none involving a situation similar to ours. Undoubtedly, in a broad sense, Angelina Poultry Company can be said to be engaged in an agriculturally oriented business. But its activities are as purely commercial as any other business and we feel the Legislature did not intend to extend the exemption of "farm laborers" to employees of this type of operation. This point is overruled.

Insurer's second point of error complains as follows:

"The trial court erred in entering Judgment for Plaintiff because there is no evidence to support the jury's answer to Special Issue Number Four which found that James Stanley Mitchell was injured within the scope of his employment with Angelina Poultry Company."

Art. 8309, § 1b, V.A.C.S., reads, in part, as follows:

"Unless transportation is furnished as a part of the contract of employment or is paid for by the employer, or unless the means of such transportation are under the control of the employer, or unless the employee is directed in his employment to proceed from one place to another place, such transportation shall not be the basis for a claim that an injury occurring during the course of such transportation is sustained in the course of employment."

■ Clearly, if James' injury had occurred while riding in the truck from the broiler house to his home, it would have been sustained in the course of his employment. This insurer recognizes. Was his transportation home terminated when he got out of the truck? We think not. The nature of this job, the late hour, and the age of the boy all make it more reasonable, we think, to extend this transportation until the boy crossed the highway. The warning given by the driver recognized his feeling of responsiblity until he was safely across.

In Travelers Insurance Company v. Mesta, 435 S.W.2d 228, 230–231 [Tex.Civ.App., San Antonio, 1968, error ref. n. r. e. 438 S.W.2d 905 (1969)], "Plaintiff maintains that since he was not driving his car at the time of the injury he could not be engaged in travel and that the provisions of Art. 8309, § 1b, supra, are not applicable." The court answered this contention thusly:

"We do not believe that the term 'travel' or 'transportation,' as used in Art. 8309, § 1b, has any such restricted meaning as contended by plaintiff. Travel in its ordinary connotation means going from one place to another. See Thorndike Barnhart Comprehensive Desk Dictionary, New Revised Ed.; Words & Phrases, Vol. 42A, p. 8; 87 C.J.S. Travel pp. 907–908. To travel is to pass or make a journey from place to place, whether on foot, on horseback, or in any conveyance."

In Shelton v. Standard Insurance Company, 389 S.W.2d 290, 293–294 (Tex.1965), claimant had been engaged to drive a truck from Wichita to Abilene. He was injured crossing a street to get something to eat. In holding his injury within the course and scope of his employment, the court said:

"It could not be seriously contended that petitioner, while crossing the street, was in the scope of his employment for establishing liability under the doctrine of respondeat superior, but our Workmen's Compensation Act must be given a liberal construction to carry out its evident purpose. 'An injury has to do with, and arises out of, the work or business of the employer, when it results from a risk or hazard which is necessarily or ordinarily or reasonably inherent in or incident to the conduct of such work or business.' Lumberman's Reciprocal Ass'n. v. Behnken, 112 Tex. 103, 246 S. W. 72, 28 A.L.R. 1402."

In Jecker v. Western Alliance Insurance Company, 369 S.W.2d 776, 778 (Tex.1963),

Judge Calvert, speaking for the court, said:

"The general rule is, in reality, even broader than we had occasion to state it in Coleman [American General Insurance Co. v. Coleman, 157 Tex. 377, 303 S.W.2d 370, 374 (1957)]. It is that injuries incurred by a workman while traveling on public streets and highways are not incurred in the course of employment. But there are exceptions to that rule. One of the exceptions is when injury occurs while the workman is traveling on the public streets or highways pursuant to express or implied requirements of his employment contract. [citations omitted] . . . The rationale of it is that since the workman's employment requires him to subject himself to the risks and hazards of streets and highways, his injuries grow out of his employment. . . . The exception was well established before the adoption of Sec. 1b of Art. 8309 by the Legislature, and it must be assumed that the section was enacted with full knowledge of it."

We recognize that our Supreme Court has held in Texas General Indemnity Company v. Bottom, 365 S.W.2d 350, 353–354 (Tex.1963):

"The new section [viz § 1b] does not provide that an employee shall be deemed or may be regarded as being in the course of his employment when any one of the specified conditions is satisfied. We also note that Section 1 was amended in 1959, but the above quoted definition of 'injury sustained in the course of employment' was not changed. When the provisions of Section 1b are read in connection with those of Section 1 and our decisions construing and applying the same, we think the Legisla-

ture intended thereby to circumscribe the probative effect that might be given to the means of transportation or the purpose of the journey rather than to enlarge the definition found in Section 1. The intention to authorize compensation for an injury received while the employee is permitted, solely for his own accommodation and not for any purpose connected with the employment, to ride in a vehicle owned and controlled by the employer, would have been expressed in clearer terms if that had been the legislative purpose. It is still necessary, therefore, for the claimant to show that the injury is of a kind and character that had to do with and originated in the work, business, trade or profession of his employer and was received while he was engaged in or about the furtherance of the affairs or business of the employer."

The problem in each case is to determine whether the relationship between the travel and the employment is so close that it can fairly be said that the injury had to do with and originated in the work, business, trade or profession of the employer. Shelton v. Standard Insurance Company, supra.

Applying this test, we believe James' travel to and from home was closely related to Angelina's business. In no other way could they have obtained the services of an eight year old boy in the night time and in a different county. It was a necessity and not an accommodation and the risks of his travel were as real and job related in crossing the highway as in riding in the truck. This point is overruled.

We have considered appellants' other points of error and, finding them without merit, they are overruled. The judgment of the court below is affirmed.