UNITED STATES FIRE INSURANCE
COMPANY, Appellant,

v.

Rosa S. ALVAREZ and Manuel
Alvarez, Appellee.

No. 16887.

Court of Appeals of Texas,
San Antonio.

July 29, 1983.

Rehearing Denied Sept. 14, 1983.

Sawtelle, Goode, Davidson & Troilo, Jess M. Irwin, III, John A. Heller, John W. Davidson, San Antonio, for appellant.

Richard Tinsman, Stephen F. Lazor, San Antonio, for appellee.

Before CADENA, C.J., and BUTTS and DIAL, JJ.

OPINION

BUTTS, Justice.

This is a worker's compensation [1] case. On August 9, 1978, Tranquilino Alvarez, a migrant farm worker from Laredo, arrived in Dell City to work at a 14,000 acre farm owned and operated by C.L. Machinery Company, Inc. (C.L.M. Farms). Alvarez, sixty-one years of age, earned $2.65 an hour, his principal jobs being to keep the packing machines in the packing shed operational and to ice down the boxed cantaloupes after they were loaded onto the trucks during cantaloupe season.

An ice machine crushed three hundred pound blocks of ice while Alvarez grasped the two metal handles at the end of the hose and directed the spray of ice. Each truck required eight to twelve three hundred pound blocks of ice, each taking twenty to thirty minutes to ice down. Cantaloupe season extended from August 14th to September 3rd, 1978, from 8:00 a.m. to 10:00 p.m., seven days a week.

Eight to ten days after harvesting of the cantaloupes, Alvarez complained to his supervisor of not feeling well, not specifying what was wrong. On September 15 Alvarez visited Dr. Oscar Lozano in Dell City complaining of fever and numbness in his left index finger. On September 18 Alvarez visited Dr. Billy C. Lipsey in Van Horn complaining of pain in his right hand and arm and shortness of breath. Doctor Lipsey observed an inflammation or infection of one finger of the right hand that appeared to be the result of a wound or cut.

Taking medication but still not feeling well, Alvarez returned to Laredo on September 24. His wife noticed he was in a great deal of pain and that three fingers of both hands were purple. An ambulance transported him to Doctor's Hospital where he was examined and admitted. The admitting physician, Dr. Thuy Danh Do, diagnosed all of Alvarez's fingers as gangrenous from the tips to the middle knuckle joints, making a temporary diagnosis that injury

was the result of frostbite. The treating physician, Dr. Miguel Eugenio Najera, concurred with Dr. Do's diagnosis.

On October 1st, Alvarez was transferred to the hospital's intensive care unit with his lungs congested to the point that a tracheotomy was performed and a respirator employed. One week later Alvarez suffered a stroke; his condition worsened; on October 13, 1978, he died. The autopsy report and the death certificate listed three causes of death: extensive pneumonia of both lungs, left cerebrovascular accident, and frostbite and necrosis of fingertips.

Alvarez's widow, Rosa S. Alvarez, for herself and all his beneficiaries filed a claim for worker's compensation. Following a formal hearing, the Board (Texas Industrial Accident Board) awarded Alvarez's widow and his minor son Manuel weekly compensation payments, reimbursement for medical expenses, and funeral costs.

The widow and son filed suit in Webb County to set aside the ruling of the Board. Tex.Rev.Civ.Stat.Ann. art. 8307a (Vernon Supp.1982–1983). Appellant filed its plea of privilege, asserting proper venue to be in Dallas County. The trial court overruled the plea of privilege. This court in *United States Fire Insurance Co. v. Alvarez*, 608 S.W.2d 264 (Tex.Civ.App.—San Antonio 1980, writ dism'd), affirmed that decision.

After trial the jury responded favorably for appellees, and judgment was entered accordingly. United States Fire Insurance Company appeals, alleging thirty-eight points of error. Appellant's initial points of error relate to special issue number one of the jury charge,

Do you find from a preponderance of the evidence that in August and September of 1978, Tranquilino Alvarez was not a "farm laborer" in connection with the duties he was hired to perform by C.L. Machinery Company, Inc.?

Farm laborer is one who works in the employ of the operator of a farm and is engaged in the planting, cultivating

---

1. The term "workmen's compensation" has been changed to "workers' compensation" by

legislative enactment. Tex.Rev.Civ.Stat.Ann. art. 8306b (Vernon Supp.1982–1983).

and/or harvesting of agricultural or horticultural crops in their unmanufactured state.

The jury responded, "He was not a farm laborer." The charge was given because "farm laborers" are excluded from coverage under the Workers' Compensation Act (the Act). Tex.Rev.Civ.Stat.Ann. art. 8306, § 2 (Vernon Supp.1982–1983).

■ What a "farm laborer" is, within the meaning of the Act, is a question of law; whether one meets the definition is a question of fact. If the facts are undisputed, then the question becomes one purely of law. *Georgia Casualty Co. v. Hill,* 30 S.W.2d 1055, 1056 (Tex.Civ.App.—Eastland 1930), *aff'd,* 45 S.W.2d 566 (Tex.Comm'n App.1932, judgmt. adopted).

■ The definition of "farm laborer" as given herein was approved in *Texas Employers' Insurance Association v. Derrick,* 207 S.W.2d 199, 202–03 (Tex.Civ.App.—Amarillo 1947, writ ref'd n.r.e.). The term should be given its broad and general meaning. *Millers Mutual Fire Insurance Co. of Texas v. Rawls,* 500 S.W.2d 545, 546 (Tex.Civ.App.—Beaumont 1973, writ ref'd n.r.e.).

■ That Alvarez's injury occurred from spraying ice on cantaloupes just prior to shipping is undisputed. Therefore, whether he was a farm laborer is a question of law. The actual work Alvarez performed and its relation to the overall operation is determinative. More specifically, the work he was performing at the time of injury controls and his other duties are immaterial as long as he was performing in an enterprise covered by the Act. *Hardware Dealers' Mutual Fire Insurance Co. v. King,* 426 S.W.2d 215, 217–18 (Tex.1968).

Is the preparing and packaging of produce for shipment by independent contractors the work of a farm laborer? Appellant presents two arguments. The first is that one who works on a farm is a farm laborer. The second is that if the item the employee is working with is a farm product, such as cantaloupes, then the employee is a farm laborer.

Although we find no Texas cases directly on point, the cases that do exist offer some guidance. In *Millers Mutual Fire Insurance Co., supra,* the court found the gathering of chickens for shipment to broilerhouses not to be farm labor. Although agriculturally oriented, the work was "commercial." Likewise, in *Texas Employers' Insurance Association, supra,* the feeding of customer owned cattle by a mill employee at feeding pens operated by the mill, but located on a farm one mile north of the mill, did not alter employment from commercial to agricultural.

Decisions from other jurisdictions, more on point, offer more illumination. The Louisiana courts distinguished between a sugar cane cutter and a worker who stacks cut and stripped cane for delivery to the factory, declaring the latter is not an agricultural laborer. *Compare Griffin v. Catherine Sugar Company,* 42 So.2d 913 (La.App. 1949), *rev'd on other grounds,* 219 La. 846, 54 So.2d 121 (1951) *with Robichaux v. Realty Operators,* 195 La. 70, 196 So. 23 (1940). In a case strikingly similar to the one at bar, a Florida court decreed employees who worked in packing sheds were not "agricultural farm laborers" and thus were covered by workers' compensation. *Dobbins v. S.A.F. Farms,* 137 So.2d 838 (Fla.App.1962).

■ It is regrettable that the Legislature has established a class of people to be excluded from compensation under the Act without offering guidelines for determining those that are members of the class. Although we are told to give the term its general meaning, the court still must distinguish between different types of "agriculturally oriented" labor. The obvious purpose of the exclusion is to deny coverage to those whose employment is not considered hazardous. *See Gordon v. Buster,* 113 Tex. 382, 257 S.W. 220, 221 (1923). In the modern farming market, however, machinery that is often used can no longer be considered non-hazardous. Further, as has frequently been noted, the modern farm is no longer a sole farmer with five to ten employees. Rather, many farms are just one cog in a giant structure that involves every

process necessary to bring the goods to the supermarket. Some farming businesses even own the stores. Where is the line to be drawn? Does it matter that a sole farmer owns the packing shed rather than a canning company? Is there a difference between one who separates the produce from the soil and the employee who unloads the truck at the packing shed? A treatise on the subject (1C A. LARSON, THE LAW OF WORKMEN'S COMPENSATION), states,

In all these cases it should be remembered, however, that the decisive question is the nature, not of the employer's business, but of the employee's employment. If the employee's work is agricultural in nature, it is no less so because the employer happens to be a factory or chemical company unless, as these cases indicate, it is held that in the circumstances an operation on the farm is really the first stage of industrial processing.

*Id.* at § 53.31, p. 9–152 to 153 (1982). Appellant argues the definitions of "agricultural laborer" found in the Unemployment Compensation Act, Tex.Rev.Civ.Stat.Ann. art. 5221b–17(g)(5)(B) (Vernon Supp.1982–1983) and "agriculture" found in the Texas Minimum Wage Act of 1970, Tex.Rev.Civ. Stat.Ann. art. 5159d, § 3(f) (Vernon 1971) indicate legislative intent to include those that package for shipment within "farm laborer." We disagree. Although the terms defined are similar, the three Acts were passed at different times; the first version of the Workers' Compensation Act excluding farm laborers passed in 1913. Workmen's Compensation Act, ch. 179, 1913 Tex.Gen.Laws 429. The definitions the Legislature chose to give in 1969 and 1970 to the terms "agriculture" and "agricultural labor" in no way indicate the same definitions were intended to apply to the term "farm laborer," first implemented fifty-two and sixty years earlier, and existing since. We direct the Legislature's attention to this matter for clarification.

■ We hold that once the cantaloupes were in the packing shed, they were no longer part of the farming process, and the employees working therein were not "farm laborers" excluded from the Workers' Compensation Act. At that point the shipping process, a commercial rather than a farming activity, had commenced. The boxing of the cantaloupes, the loading of them onto the trucks, and the icing down were all part of the commercial shipping process. Accordingly we overrule appellant's first eight points of error. Any error that occurred in submitting special issue number one, since as a matter of law, Alvarez was not a "farm laborer," was harmless in that the jury's response comported with this court's holding.

By its ninth and tenth points of error appellant cites a fatal variance between the claim presented before the Industrial Accident Board, alleging accidental injury, and plaintiff's first amended original petition, alleging both accidental injury and in the alternative, occupational disease. It relies upon *Solomon v. Massachusetts Bonding and Insurance Co.,* 347 S.W.2d 17 (Tex.Civ. App.—San Antonio 1961, writ ref'd) for the proposition that the claim presented in the District Court must be the same claim presented and acted upon the Industrial Accident Board, and if not, the District Court lacks jurisdiction. *Id.* at 19.

■ As appellees have pointed out, the case of *Johnson v. American General Insurance Co.,* 464 S.W.2d 83 (Tex.1971) is dispositive of this point. Appellant is correct that *Johnson* "does not stand for the proposition that any claim of accidental injury will suffice to give a court jurisdiction of an occupational pleading, as long as the damage to the claimant's body is the same or reasonably similar." Rather, the manner or cause of the injury must be stated in the claim so that the Board may properly investigate, hold a hearing, and determine the correctness of the claim. *Id.* at 86. As long as "there is a fair and substantial identity of claim (whether it be an accidental injury or a statutory occupational disease) thereafter sued upon in court, then there is no fatal variance." *Id.* at 87. It is not necessary that the claimant know the "correct

legal classification" when filing the claim. *Id.* at 86.

■ Appellant argues by the amendment of their pleadings, appellees effectively established venue was no longer proper in Webb County, since Tex.Rev.Civ.Stat.Ann. art. 8307, § 5 (Vernon Supp.1982–1983) provides different venue requisites for accidental injuries and for occupational diseases.[2] However, when the amended petition omitted therefrom the only ground that made the cause triable in Webb County, the interposition seasonably of appellant's plea of privilege became necessary. *Farnham v. First National Bank of El Paso*, 28 S.W.2d 883, 884 (Tex.Civ.App.—El Paso 1930, no writ); 1 R. McDONALD TEXAS CIVIL PRACTICE § 4.06 (rev.1981). Error regarding its right to be sued in the county of its residence has not been preserved. The record fails to reflect that appellant presented a plea of privilege subsequent to the filing of the amended petition. Appellant's ninth and tenth points of error are overruled.

■ Appellant also claims the amendment was a surprise and the trial court erred in failing to grant its motion for continuance as required by Tex.R.Civ.P. 63. The plaintiff's original petition specifically pled accidental injury. The claim presented to the Board asserted accidental injury and the Board specifically so found. Appellee controverted appellant's plea of privilege by asserting an accidental injury, rather than an occupational disease, thus successfully retaining venue in Webb County. *See United States Fire Insurance Co., supra.* The amended petition, filed ten days before trial, alleged *factually,* but not specifically,

an accidental injury, and in the alternative, *specifically and factually* pled occupational disease.

Appellee denies surprise to appellant because of discovery prior to trial arguing, "The evidence as adduced in oral deposition further demonstrated that it would not be possible to trace Mr. Alvarez's frostbite and resulting gangrene to a particular day during this three week period [that he iced down cantaloupes] as opposed to his having sustained the frostbite over several days from the repeated exposures." Neither appellant nor appellee asked any of the doctors at their depositions about Mr. Alvarez sustaining an accidental injury on the specific date, September 14, 1978.

Appellees say the motion for continuance was designed to delay and not in good faith. Was it fair for appellee to plead accidental injury and sustain venue on that point, when by its own admission the evidence was clear that the case was one of occupational disease? Was it proper of appellee to hide behind its pleadings until ten days before trial? The answer is undoubtedly, "No". Any delay would be of appellee's own making.

The fairness of appellee's actions, however, are not in issue. Nor is the question of venue. The issue is surprise. Appellee's originally pled an accidental injury occurring on or about September 14, 1978. In the amended pleadings, appellees pled an occupational disease, but did not specify a date disability occurred. *See* Tex.Rev.Civ. Stat.Ann. art. 8306, § 20 (Vernon Supp. 1982–1983). The jury found the date to be September 14, 1978.

2. [In cases other than occupational disease, he shall] bring suit in the county where the injury occurred, or in the county where the employee resided at the time the injury occurred (or, if such employee is deceased, then in the county where the employee resided at the time of his death), to set aside said final ruling and decision, and said Board shall proceed no further toward the adjustment of such claim, other than hereinafter provided. In all cases of occupational diseases, for the purpose of determining venue when ·an appeal is effected to set aside the final ruling

and decision of the Board, suit shall be brought in a court of competent jurisdiction in the said county in which the employee was last exposed to the disease alleged, prior to the manifestation of the disease, or death therefrom, or in the county in which the adverse party resides, or has a permanent place or business, or by agreement of the parties in a court of competent jurisdiction in any county in this state.
Tex.Rev.Civ.Stat.Ann. art. 8307, § 5 (Vernon Supp.1982–1983).

Appellant theorizes the amendment resulted from the impossibility of proving the deceased sprayed ice after September 3, 1978, and thus the inability to connect employment and injury to the date originally pled. This may be the reason, but it still does not decide the issue of surprise.

 The Act includes occupational disease within the definition of injury, Tex. Rev.Civ.Stat.Ann. art. 8306, § 20 (Vernon Supp.1982–1983), but we cannot say that "*accidental* injury" also encompasses occupational disease. An accidental injury is an injury traceable to a definite time and place and involves a specific mishap that causes harm to the body. *Texas Employers' Insurance Association v. McKay,* 146 Tex. 569, 210 S.W.2d 147, 150 (1948). On the other hand, "occupational disease" can be a disease that arises "out of and in the course of employment", Tex.Rev.Civ.Stat.Ann. art. 8306, § 20 (Vernon Supp.1982–1983), with "disease" being given its common meaning. An occupational disease also includes "damage or harm to the physical structure of the body occurring as the result of repetitious physical traumatic activities extending over a period of time and arising in the course of employment. . . ." *Id.* If Alvarez's injury was an occupational disease, it clearly falls within the latter definition rather than the former. We conclude the frostbite injury was undoubtedly an occupational disease rather than an accidental injury. Prolonged exposure to cold is necessary to sustain frostbite. In Alvarez's case, the exposure could have occurred on one day or over a period of days. Either way, it would be an occupational disease. The import of the Act is that for an injury to be an accidental injury, it must be traced to a specific happening, while an occupational disease requires extended exposure over hours or days. Appellant should have been aware as discovery progressed that the claim being made was, in reality, one of occupational disease, irrespective of appellee's pleadings. We presume appellant so argued in its plea of privilege.

 The decision to grant or deny a motion for continuance rests within the sound discretion of the trial court and will not be reversed on appeal absent an abuse of that discretion. *Hernandez v. Heldenfels,* 374 S.W.2d 196, 202 (Tex.1963). We cannot say that an abuse of discretion has occurred. We do not agree with appellant's argument that the theory of the case changed from a single injury to a series of small injuries occurring over a period of two months. In preparation for trial, as evidenced by the taped deposition of Dr. Schiffer, the parties were concerned with how and if Alvarez suffered frostbite. Also clear is the parties' evident awareness that extended exposure was necessary to suffer the damage that was claimed. Surprise has not been shown. The point of error is overruled.

 Error is also asserted in the failure of the trial court to grant a continuance and appoint a medical committee to give an opinion on all medical questions in the case as authorized by Tex.Rev.Civ.Stat.Ann. art. 8307, § 13 (Vernon 1967). Appellant filed its motion the day of trial. The trial court could properly determine appellant's motion was not timely. The trial court did not err in failing to grant the continuance necessary to appoint the committee.

The damages awarded to appellees were calculated from September 14, 1978, the date the jury found that Alvarez was unable to work due to the injury. Appellees pled that Mrs. Alvarez was "entitled to receive the worker's compensation benefits due and owing to Tranquilino Alvarez from the time of his injury to the time of his death." Appellant specially excepted to this pleading, alleging such a claim was "never presented to or ruled upon by the Industrial Accident Board, which claim did not survive the death of Tranquilino Alvarez." Appellant urges the same argument in the thirteenth, fourteenth, fifteenth, thirtieth and thirty-first points of error.

Appellees reply that in open court the parties stipulated, "[T]hat the widow and child, if they prevail, are entitled to the maximum rate under law, from the date of injury and would not be required to put [on] any evidence with regard to the wage rate."

Such stipulation is binding on the parties. Tex.R.Civ.P. 11. They further agreed, however, that the division between appellees is a matter of law. We have examined the judgment and the calculations involved in reaching the award granted and find the trial court erred in the division between the two appellees.

The Act envisions two types of compensation awards and causes of action, one for the beneficiaries of the deceased and one for the injured employees. Tex. Rev.Civ.Stat.Ann. art. 8306, §§ 8, 10, 11 (Vernon Supp.1982–1983) (death, total incapacity, and partial incapacity). When the death of the employee is the result of a compensable injury, the new cause of action for death benefits under § 8 vests in the legal beneficiaries. *American Motorists Insurance Co. v. Villagomez,* 398 S.W.2d 742, 744 (Tex.1966). The beneficiaries may also be substituted for the deceased in any claim pending before the board at the time of death for all accrued benefits as long as the injury made the basis of the claim also caused death. *Id.;* Tex.Rev.Civ.Stat.Ann. art. 8306, § 16 (Vernon 1967). The beneficiaries of Alvarez were entitled to recover for the benefits that accrued between September 14 and October 13, 1978. *American Motorists Insurance Co., supra,* speaks of substituting *beneficiaries,* not one beneficiary or the widow, and thus Alvarez's minor son, Manuel, was entitled to recover one-half of the benefits awarded his mother for the period of September 14 to October 13, 1978. We reform the judgment to so reflect. Appellant's thirteenth, fourteenth, fifteenth, thirtieth, and thirty-first points of error are overruled.

Appellant's principal defense at trial was that Alvarez's bout with pneumonia resulted not from the gangrene of his hands but from some other source, and that he suffered staphylococcal pneumonia prior to his return to Laredo. Numerous physicians testified that a sign of staphylococcal pneumonia is chills and/or fever. Jose Luis Ibarra, the employee of C.L.M. Farms who drove Alvarez home, testified that (1) Alvarez appeared to have chills on the way home; (2) Alvarez wore a jacket; (3) it was not cold; (4) Alvarez kept his hands under his coat as if he were cold; (5) Alvarez looked as if he were cold in that he rubbed his hands together; and (6) Alvarez was "[s]omewhat agitated, as if when somebody's got pneumonia or something like that."

On rebuttal, Mrs. Alvarez testified her husband was not wearing a jacket when he returned from Dell City. The shirt, pants and underwear he wore at the time were admitted in evidence over appellant's objection. Mrs. Alvarez verified the clothing and said she kept these items under her mattress at home after they were returned by the hospital.

Appellant argues the clothing has no materiality or relevance, and was used solely to elicit the sympathy of the jury. We disagree. The evidence of the items as the only clothes Alvarez wore, coupled with evidence of their lightness and appropriateness for warm weather, was material. The clothing was in no way prejudicial, e.g., not covered with blood. Appellant's sixteenth point of error is overruled.

To prove the cause of death, appellees introduced a certified copy of the certificate of death, which listed one of the underlying causes of death as "frostbite and necrosis of fingertips." The certified copy did not have any handwritten signatures, except for the one of the deputy registrar that made the copy, and instead used "/S/" followed by typewritten names. "Dr. Nabil Tadros" appeared as the typewritten name of the doctor who signed the certificate. A pathologist, he conducted the autopsy of Alvarez. Tex.Rev.Civ.Stat.Ann. art. 4477, Rule 40a (Vernon Supp.1982–1983) states, "Except as otherwise provided, the medical certification shall be made by the physician, if any, last in attendance of the deceased."

We find any error occurring in the admission of the copy of the death certificate was harmless. Dr. Tadros testified at trial that the gangrene "contributed to his death." He also testified as to the other causes shown on the certificate and in fact

detailed his complete autopsy report, which was also admitted in evidence. Appellant's seventeenth point of error is overruled. *Cf. Pan American Life Insurance Co. v. Youngblood,* 569 S.W.2d 951, 958 (Tex.Civ.App.—Tyler 1978, writ ref'd n.r.e.) (presumed error in excluding cause of death from death certificate harmless due to other testimony).

Tranquilino Alvarez, Jr. testified he visited his father in the emergency room at the hospital. Appellant alleges error occurred in permitting the son to testify to statements made by Alvarez at that time. Appellant fails, however, to point out specific testimony where error occurred. We can find one out of court statement that the father, in response to inquiry as to what was wrong, said, "My hands."

 First, as this Court stated in *Salinas v. Casualty Insurance Co. of California,* 323 S.W.2d 600 (Tex.Civ.App.—San Antonio 1959) *affirmed,* 160 Tex. 445, 333 S.W.2d 109 (Tex.1960), "Statements of present pain are hearsay, but they are admissible as an exception to the hearsay rule." *Id.* at 601. The son testified that his father was in a great deal of pain at the time. Second, the evidence is overwhelming that at the time Alvarez checked into the hospital he was suffering from gangrenous hands, proven to be very painful. Third, Alvarez's chief complaint of pain in his hands is immaterial as to whether he also suffered from pneumonia. *Cf. Deering v. Texas Employers' Insurance Association,* 582 S.W.2d 611, 614 (Tex.Civ.App.—Fort Worth 1979, writ ref'd n.r.e.) (fact that employee's leg hurt not probative of whether the injury was job related). The point of error is overruled.

Special issue number two inquired of the jury,

Do you find from a preponderance of the evidence that Tranquilino Alvarez received an injury of frostbite during August and September, 1978?

"Injury" means any disease which causes damages or harm to the physical structure of the body and such other diseases or infections as naturally result therefrom. It also includes damage or harm of repetitious physical traumatic activities extending over a period of time.

The jury responded, "We do." The injury was then found to have occurred in the course of employment.

 Appellant asserts error in the failure of the trial court to include in the definition of "injury" an exclusion of "[o]rdinary diseases in life to which the general public is exposed outside of the employment. . . ." Tex.Rev.Civ.Stat.Ann. art. 8306, § 20 (Vernon Supp.1982–1983). Appellant cites no authority in support of its argument. Tex.R.Civ.P. 418. We find the evidence does not support the necessity of such an exclusion, for the specific injury inquired of, frostbite, is not an ordinary disease of life to which the general public is exposed to outside employment. Tex.R. Civ.P. 277. Moreover, such an inquiry was made in special issue number seven. The twenty-first point of error is overruled.

 No evidence to support the submission of special issue number two, insufficient evidence to support the jury's response to the issue, and insufficient evidence to support the jury's response to special issue number three are assigned as points of error numbers nineteen, twenty, and twenty-two.[3] We have examined the record and have determined there was sufficient evidence to support both the submission and the jury's responses to the issues.

Both issues number two and three address the question whether Alvarez suffered the injury of frostbite while using the ice machine in the course of his employment. Although exact temperature readings of the coldness of the handles on the machine were not shown, there was evidence that from August 14th to September 3, 1978, Alvarez applied from 194,000 to

---

**3.** Appellant again asserts that the claim before the Board varied from the claim asserted at trial. We have already dealt with this argument in our discussion of appellant's ninth and tenth points of error.

291,600 pounds of ice to a total of 81 trucks, with eleven trucks alone being loaded on August 28th.[4] One of Alvarez's fellow employees testified that he sometimes wore gloves, but mostly he did not. Another stated that Alvarez always wore gloves, but admitted on cross-examination that he was not in a position to see Alvarez using the machine and that he based his opinion on his always seeing gloves in Alvarez's pocket.

The principal argument against Alvarez' suffering from frostbite is the fact that he never told his superior or fellow employees that his hands hurt nor did they notice anything wrong with his hands. All he said was that he did not feel well. The complaints made to the first two doctors, however, included numbness in the left index finger and pain in the right hand. Although neither doctor diagnosed frostbite, the first testified that he was not sure whether the injury he observed could have been the result of frostbite and the other said that it could be, both pointing out they were then unaware Alvarez was exposed to cold. Medical testimony established there is a period after exposure to cold when the hand looks normal but, in fact, the tissue is breaking down.

The evidence created these fact issues: when the injury occurred, the nature of the injury, and whether it occurred in the course of employment. Both parties presented evidence of probative force and the issues were for the jury to decide. Our task is not to substitute our judgment for that of the jury, and where there is contradictory testimony of probative force, as here, the jury's decision will not be disturbed on appeal. *Swinney v. Winters,* 532 S.W.2d 396, 406 (Tex.Civ.App.—San Antonio 1975, writ ref'd n.r.e.). Appellant's nineteenth, twentieth, twenty-second and twenty-third points of error are overruled.

The jury also made the following findings:

4. The frostbite resulted in gangrene.
5. The frostbite and the resulting gangrene was a producing cause of the death of Tranquilino Alvarez.

\* \* \* \* \* \*

7. All the causes of death of Tranquilino Alvarez, other than frostbite and resulting gangrene, followed as an incident to the frostbite and resulting gangrene.

Appellant asserts there was no evidence to support the jury's answer to special issue number five and insufficient evidence to support the responses to issues number four, five and seven.

Appellant's theory of the cause of death is that Alvarez contracted bronchitis and pneumonia prior to the injury to his hands and prior to the admission to the hospital, that the pneumonia went undetected and unattended, but once detected, Alvarez was already critical. Appellees' theory is that Alvarez contracted pneumonia because the gangrene defeated the body's defensive mechanisms, permitting infection to enter the bloodstream, and causing septic shock to the lungs.

There is probative evidence to support both viewpoints. There was evidence that Alvarez had trouble breathing, suffered fever, and was prescribed antibiotics before his admission to the hospital. The doctor in Van Horn diagnosed bronchitis. The worker who drove Alvarez back to Laredo believed Alvarez was suffering from chills. Dr. Tadros, the pathologist who performed the autopsy, testified from his examination of the x-ray records that Alvarez suffered from the early stages of pneumonia when admitted to the hospital. He also believed the gangrene did not cause the pneumonia. The admitting physician, Dr. Najera, testified that early stages of pneumonia may not be audible through a stethoscope. Alvarez's respirations were above normal

4. C.L.M. Farm's records indicate that they purchased 2,092 three hundred pound blocks of ice. The following number of trucks were loaded on the following days: 8–14–78, 1; 8–16–78, 2; 8–17–78, 1; 8–18–78, 3; 8–18–78, 2; 8–20–78, 3; 8–21–78, 4; 8–22–78, 4; 8–23–78, 2; 8–24–78, 8; 8–25–78, 6; 8–26–78, 9; 8–27–78, 4; 8–29–78, 11; 8–29–78, 6; 8–30–78, 3; 8–31–78, 7; 9–1–78, 3; 9–2–78, 1; 9–3–78, 1.

upon admission and his temperature was not high, but he had been taking antibiotics that could mask a fever. Dr. Mendoza, a consulting internist, testified that Alvarez's admission x-rays showed extensive bilateral pulmonary infiltrates, which were abnormal and indicated an infection or fluid in the lungs or both. Dr. Schiffer, a consulting internist, testified his examination of the x-ray records showed Alvarez suffered from pneumonia at the time of his admission. He also testified the gangrenous condition was not a producing cause of death because the gangrene was preceded by lung infection, there was no evidence of the gangrene area that would cause pneumonia, the sepsis that was an important factor in the death was unrelated to the gangrene, and the hand x-rays did not show extensive injury to the underlying tissue of the hands. He concluded the infection in the lungs and toxins in the bloodstream caused the gangrene.

On the other side of the coin, all of the Laredo treating physicians testified that staphylococcal pneumonia was not present when Alvarez was admitted to the hospital. Dr. Najera, the attending physician, testified that Alvarez displayed no signs of pneumonia, although he did say that the patient told him he had been coughing. The doctor associated the high pulse rate and respirations with Alvarez's pain and anxiety, and read the x-rays to indicate some sort of virus or infection, not, however, pneumonia. Dr. Tadros, the pathologist, who testified that the gangrene did not cause the pneumonia, did testify that the gangrene contributed to Alvarez's death by creating a weakened condition which permitted the pneumonia to develop. All of the treating physicians testified that the frostbite and the gangrene were producing causes of Alvarez's death.

The evidence supports three possible causes of death: (1) pneumonia caused by the gangrene and frostbite; (2) pneumonia that was present before the frostbite and gangrene and the latter defeated the body's defensive abilities to ward off the pneumonia; and (3) pneumonia that existed before and caused the gangrene and the pneumonia alone caused death. The jury in response to special issue number five found that "but for" the injury to the hands, death would not have occurred, and in response to special issue number seven, that all other causes of death, such as pneumonia, were "incident to" the frostbite and gangrene. The responses and the charges defeated the "ordinary diseases of life" exception to the act since the jury found the other causes of death to be incident to their finding of an occupational disease or injury. Tex.Rev.Civ.Stat.Ann. art. 8306, § 20 (Vernon Supp. 1982–1983).

The jury's responses are not against the great weight and preponderance of the evidence. When there is evidence of probative force to both support and defeat the jury's decision, it will not be overturned on appeal. *Swinney, supra.* Appellant's twenty-fourth through twenty-seventh points of error are overruled.

In its twenty-eighth point of error, appellant asserts error in failing to include in the definition of "producing cause" the following instruction or definition of sole cause adapted from 2 STATE BAR OF TEXAS, TEXAS PATTERN JURY CHARGES PJC 25.01 (Supp.1976):

> There may be more than one producing cause of death but there can be only one sole cause. If an injury or condition was the sole cause of death, then no other injury or condition could have been a producing cause.

The carrier has the burden of pleading, proving, and requesting a charge on sole causation to preserve any error. Tex.R. Civ.P. 277. *See Texas Employers Insurance Association v. Page,* 553 S.W.2d 98, 100 (Tex.1977). Appellees argue that any error that occurred did not cause the rendition of an improper judgment and thus reversal is not required under Tex.R.Civ.P. 434. This is predicated upon the submission of special issue number seven in response to which the jury found all of the causes of death followed as an incident to the frostbite and gangrene.

We find no error in the trial court's failure to give the requested instruction on

sole cause. Although the request by appellant, or the instruction given in *Evans v. Casualty Reciprocal Exchange,* 579 S.W.2d 353, 356 (Tex.Civ.App.—Amarillo 1979, writ ref'd n.r.e.) are proper, the trial court has considerable discretion in deciding which instructions should be given. *Thomas v. Oil & Gas Building, Inc.,* 582 S.W.2d 873, 882 (Tex.Civ.App.—Corpus Christi 1979, writ ref'd n.r.e.). The requested instruction by appellant would not have aided the jury and it may have resulted in the rendition of a conflicting verdict. We find the jury, in effect, was instructed on sole cause through the use of the "incident to" instruction and the allocation of percentages. Appellant's point of error is overruled.

The jury found that Alvarez became unable to work due to the injury to his hands on September 14, 1978. Appellant asserts there is no evidence and insufficient evidence to support the jury's response. Florencio Flores, Alvarez's supervisor, testified that after Alvarez saw the doctor in Dell City, he did not do any other work at all. That doctor testified he examined Alvarez on September 15th. Mr. Flores testified Alvarez went to the doctor in Dell City the day after he became sick. This is more than a mere scintilla of evidence that Alvarez became unable to work on September 14, 1978. The only other evidence contrary to this date are the payroll records of C.L.M. Farms, which indicate Alvarez worked until September 22nd. The jury's decision is supported by probative evidence and is not against the great weight and preponderance of the evidence. Appellant's twenty-eighth point of error is overruled.

Special issue number six, challenged by appellant, not only determined the date from which benefits were payable, but it also determined the weekly compensation rate under Tex.Rev.Civ.Stat.Ann. art. 8306, § 29 (Vernon Supp.1982–1983). Section 20 specifically states in cases of occupational diseases, "that the date of the cumulative injury shall be that date disability was caused thereby." *Id.* at § 20. When incapacity continues for four weeks or longer, workers' compensation benefits accrue at the date of incapacity or disability, *Id.* at § 6, and benefits are computed at the going rate as of that day. Appellant's thirty-second point of error is overruled.

Appellant asserts error occurred when the trial court awarded prejudgment interest on medical bills and funeral expenses incurred by or on behalf of Tranquilino Alvarez. The Texas Supreme Court in refusing writ of error, recently approved the holding in *Highlands Insurance Co. v. Martinez,* 638 S.W.2d 507 (Tex.App.—Houston [1st Dist.] 1982, writ ref'd n.r.e.) wherein the Court of Appeals held that article 8306a does not permit the awarding of prejudgment interest on past medical expenses. *Martinez v. Highlands Insurance Co.,* 644 S.W.2d 442 (Tex.1982). The judgment herein is reformed to delete the award of 4% interest on past funeral and medical expenses.

Appellant has cited no authority in support of its thirty-fourth and thirty-eighth points of error as required by Tex.R. Civ.P. 418(e), and they will be overruled.

The judgment against appellant awards appellees' attorneys a lump sum award of 25% of the expected weekly payments be made to Mrs. Alvarez during her life expectancy, while at the same time discontinuing payments to Mrs. Alvarez should she remarry or die. In *Stott v. Texas Employers Insurance Association,* 645 S.W.2d 778 (Tex.1983), the Texas Supreme Court stated, "[W]hen a carrier chooses to dispute liability on the claim, it is subject to a levy for a lump sum payment of fees not exceeding 25% of the award." *Id.* at 780. The Court then reversed the Court of Appeals' decision and affirmed the trial court's award of 25% of the "estimated future benefits based on the Widow's Pension Table of the Workers' Compensation Act." *Id.* a* 779. Appellant's thirty-fifth and thirty-sixth points of error are overruled.

Appellant lastly asserts that Tex.Rev.Civ. Stat.Ann. art. 8306a (Vernon 1967) requires discounting at 4% the lump sum award of attorney's fees. We agree that article

8306a requires a 4% discount to be applied to all advanced payments of compensation and that a lump sum award of attorney's fees amounts to an advance payment of a percentage of compensation.

The Widow's Pension Table judicially noticed by the trial court states that the table is based on, "[p]resent value of $1.00 per annum payable until death or remarriage." In Mrs. Alvarez's case, the table gave the "present value" for a woman of her age as 16.148 years. This figure was multiplied by 52 weeks at $105.00 a week to determine the estimated total income she would receive before death or remarriage. One-fourth of this figure was awarded as lump sum attorney's fees.

■ Printed at the end of the table, however, is "1960 U.S. Life Tables—white females—U.S. Employee's Compensation Remarriage Tables—*3.5% Interest.*" [Emphasis added]. It appears the award was discounted at 3.5% and not 4% as required by statute. We cannot determine, however, whether this in fact was true. The case is remanded to the trial court only for determination of whether the award of attorneys fees was properly discounted, and if not, for reformation.